ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Alutiiq Commercial Enterprises, LLC ) ASBCA No. 61503
)
Under Contract No. FA8101-16-C-0006 )

APPEARANCES FOR THE APPELLANT: Stowell B. Holcomb, Esq.
Mark G. Jackson, Esq.
Jackson Rosenfield, LLP
Seattle, WA

APPEARANCES FOR THE GOVERNMENT: Jeffrey P. Hildebrant, Esq.
Air Force Deputy Chief Trial Attorney
Colby L. Sullins, Esq.
Jason R. Smith, Esq.
Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE CATES-HARMAN
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This appeal involves Alutiiq Commercial Enterprises, LLC's (ACE's) claim for $1,744.330.37 to compensate it for increased costs incurred during the first option period resulting from a revised Collective Bargaining Agreement. The parties filed cross-motions for summary judgment. We have jurisdiction pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. For the reasons stated below, we grant summary judgment in favor of ACE and sustain the appeal.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS[1]

*The TSS Contract*

1. On November 19, 2007, the Department of the Air Force (Air Force) awarded to Tinker Support Services, J/V (TSS) the base civil engineering (CE) support services contract, No. FA8101-08-D-0006 (TSS Contract), for Tinker Air Force Base (AFB), OK (R4, tab 1 at 1). The contract had six options running through January 31, 2016 (*id.* at 4).

---

[1] By Air Force letter, on behalf of both parties, dated January 25, 2018, the parties agreed that they did not dispute each other's material facts. We therefore use many of the parties' statements of undisputed material facts (SUMF).

The TSS Contract incorporated by reference Federal Acquisition Regulation (FAR) 52.217-8, OPTION TO EXTEND SERVICES (NOV 1999) (*id.* at 411), which allowed for the contract services to be extended up to an additional six months.

2. On August 26, 2013, TSS entered into a collective bargaining agreement (CBA) with the International Association of Machinists and Aerospace Workers, (IAM&AW or Union) (R4, tab 17 at 650-707). The CBA between TSS and the IAM&AW was effective from August 26, 2013 to August 21, 2016 (*id.*).

*Solicitation No. FA8101-15-R-0007*

3. On October 29, 2013, the Air Force posted a synopsis for the Tinker AFB CE Services Operations Management procurement to https://www.fbo.gov (FBO) (R4, tab 3). The Air Force also posted a draft performance work statement (PWS); a draft Request for Proposal (RFP), Solicitation No. FA8101-14-R-0002; pertinent Oklahoma wage determinations; Department of Labor (DOL) Wage Determination No. 2005-2431; and the newly-consummated CBA between TSS and the IAM&AW (R4, tab 3 at 4-5).

4. The CBA between TSS and the IAM&AW was incorporated into the Option V period of performance of the TSS Contract (R4, tab 45).

5. A pre-solicitation conference was held on April 16, 2015. Questions and answers were documented. One question relating to the transition period read as follows:

> Q. Does the incumbent have transition out? What responsibilities does the new contractor have transitioning in?
>
> A. The incumbent contractor will be responsible for full performance during the transition out period. The incoming contractor shall perform during the transition IAW PWS para 1.6.1, which includes becoming familiar with the work, obtaining security clearances, vehicle registration, training etc.

(R4, tab 12 at 2) Contracting Officer (CO) DeLong recalled that prospective offerors "were repeatedly advised that the CBA between TSS and the IAM&AW would apply to the contract, but that renegotiation of some terms was necessary."[2] (DeLong decl. at 2 ¶ 7)

---

[2] The Board asked the parties to comment on this statement in CO DeLong's declaration. Both parties agreed that the statement was correct in their response to the Board. (See the parties' February 5, 2019 letters including CO DeLong's supplemental declaration listing the questions and answers she relied upon)

6. On July 8, 2015, the Air Force posted the RFP, Solicitation No. FA8101-15-R-0007, to FBO (R4, tab 16 at 3, 6; tab 17). Also posted to FBO, and incorporated into the RFP, were Wage Determination No. 2005-2431 (R4, tab 17 at 640-49) and the CBA between TSS and the IAM&AW (*id.* at 650-707).

7. On July 14, 2015, the Air Force notified TSS of its intent to exercise its option to extend the services required by the TSS Contract by up to six months – from February 1, 2016, until July 31, 2016 – pursuant to FAR 52.217-8 (R4, tab 47). On January 29, 2016, the Air Force and TSS bilaterally executed Modification No. P00083 to the TSS Contract extending the contract beginning February 1, 2016 through July 31, 2016 (R4, tab 49 at 1, 5).

*FAR Part 22 Provisions*

8. FAR 22.1010, Notification to interested parties under collective bargaining agreements, requires notice of option exercise dates:

> (a) The contracting officer should determine whether the incumbent prime contractor's or its subcontractors' service employees performing on the current contract are represented by a collective bargaining agent. If there is a collective bargaining agent, the contracting officer shall give both the incumbent contractor *and its employees' collective bargaining agent* written notification of-
>
> . . . .
>
> (2) The forthcoming contract modification and applicable acquisition dates (*exercise of option*, extension of contract, change in scope, or start of performance, as the case may be)
>
> . . . .
>
> (b) This written notification must be given at least 30 days in advance of the earliest applicable acquisition date or the applicable annual or biennial anniversary date in order for the time-of-receipt limitations in paragraphs 22.1012-2(a) and (b) to apply. The contracting officer shall retain a copy of the notification in the contract file.

(Emphasis added)

3

9. FAR 22.1012-2, Wage Determinations Based on Collective Bargaining Agreements, provides:

(b) For contractual actions other than sealed bidding, a new or changed collective bargaining agreement shall not be effective under 41 U.S.C. 6707(c) if notice of the terms of the new or changed collective bargaining agreement is received by the contracting agency after award of a successor contract or a modification as specified in 22.1007(b), provided that the contract start of performance is within 30 days of the award of the contract or of the specified modification. If the contract does not specify a start of performance date which is within 30 days of the award of the contract or of the specified modification, or if contract performance does not commence within 30 days of the award of the contract or of the specified modification, any notice of the terms of a new or changed collective bargaining agreement received by the agency not less than 10 days before commencement of the work shall be effective for purposes of the successor contract under 41 U.S.C. 6707(c).

> (c) *The limitations in paragraphs (a) and (b) of this subsection shall apply only if timely notification required in 22.1010 has been given.*

(Emphasis added)

*Contract No. FA8101-16-C-0006*

10. On May 31, 2016, the Air Force awarded Contract No. FA8101-16-C-0006 ("Contract 0006") to ACE's, in the amount of $229,807.00, to provide base civil engineering services and operations management at Tinker Air Force Base, Oklahoma (R4, tab 32 at 1). The Contract contained a two-month transition period from June 1, 2016 through July 31, 2016 ("Transition Period") and five one-year option periods (R4, tab 2 at 548). Option Year I ran from August 1, 2016 to July 31, 2017 (*id.* at 2-4).

11. The Contract contained the following FAR clause: 52.217-9, OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000); which reads in pertinent part:

> (a) The government may extend the term of this contract by written notice to the contractor within 15 calendar days prior to contract expiration; provided that the government gives the contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires . . . .

(R4, tab 32 at 190, 194)

4

12. The contract also incorporated by reference FAR 52.222-41, SERVICE CONTRACT LABOR STANDARDS (MAY 2014) which provides in pertinent part:

> (f) *Successor contracts.* If this contract succeeds a contract subject to the Service Contract Labor Standards statute under which substantially the same services were furnished in the same locality and service employees were paid wages and fringe benefits provided for in a collective bargaining agreement, in the absence of the minimum wage attachment for this contract setting forth such collectively bargained wage rates and fringe benefits, neither the Contractor nor any subcontractor under this contract shall pay any service employee performing any of the contract work . . . less than the wages and fringe benefits provided for in such collective bargaining agreement, to which such employee would have been entitled if employed under the predecessor contract . . . . No Contractor or subcontractor under this contract may be relieved of the foregoing obligation unless the limitations of 29 CFR 4.1b(b) apply . . . .

(R4, tab 32 at 190)

13. Additionally, the contract incorporated FAR 52.222-43, FAIR LABOR STANDARDS ACT AND SERVICE CONTRACT LABOR STANDARDS – PRICE ADJUSTMENT (MULTIPLE YEAR AND OPTION CONTRACTS) (MAY 2014), which provides the following in relevant part:

> (a) This clause applies to both contracts subject to area prevailing wage determinations and contracts subject to . . . collective bargaining agreements.

> (c) The wage determination . . . current on the anniversary date of a multiple year contract or [at] the beginning of each renewal option period, shall apply to this contract. . . .

> (d) The contract price, contract unit price labor rates, or fixed hourly labor rates will be adjusted to reflect the Contractor's actual increase or decrease in applicable wages and fringe benefits to the extent that the increase is made to comply with . . . :

5

(1) The Department of Labor wage determination applicable . . . at the beginning of the renewal option period.

(*Id.*)

14. ACE Contract 0006 incorporated DoL Wage Determination 2005-2431 (Revision 21) and the CBA between TSS and the IAM&AW (R4, tab 32 at 213).

15. During the transition period, TSS continued to be responsible for full contract performance under the TSS Contract (R4, tab 12 at 2; tab 14 at 18; DeLong decl. ¶¶ 8-9; *See also* app. mot. at 4, ASUMF ¶ 9). During the transition period, June 1, 2016 through July 31, 2016, ACE performed the duties set forth under the Performance Work Statement (PWS):

> **1.6.1 Transition-In.** To ensure a smooth transition phase between incumbent and incoming Contractors, the incoming Contractor shall begin a transition-in work period prior to the end of the incumbent Contractor's performance period. Contractor shall submit a Transition-In Plan and phase-in schedule to the CO with the initial proposal. Government will have opportunity to review and comment on the plan. Final Transition-In Plan must be approved by the CO at least seven (7) calendar days before start of transition period. The transition period shall not exceed 60 calendar days. The Contractor shall assume responsibility for all functions identified in the PWS on the full contract performance date agreed on the contract. The incoming Contractor shall become familiar with work during the transition-in period. The tasks during the transition-in period shall include but is not limited to items such as obtaining security clearances, processing vehicle registrations, completing training requirements, developing work plans and procedures and finalizing quality control plans and procedures. The incumbent Contractor is responsible for contract performance during the transition-in period.

(R4, tab 17 at 548-49 ¶ 1.6.1; Chandler supp. decl. at 2 ¶ 10) During this transition period Ms. Chandler sent out letters to TSS employees offering them jobs with ACE starting on August 1, 2016 (Chandler supp. decl. at 2 ¶ 9 & Exhibit A). Nearly all of the employees hired by ACE were the same employees that had worked for TSS under the previous contract (Chandler supp. decl. at 2 ¶ 8).

6

16. Throughout the transition period, CO DeLong was aware that ACE and the IAM&AW were negotiating over the terms of a new, successor CBA to replace the CBA between TSS and the IAM&AW that was incorporated into Contract No. 0006 (DeLong decl. ¶¶ 12, 17, 20-21; *see also* R4, tab 64).

17. CO Delong was aware that the TSS service employees covered by the CBA between TSS and the IAM&AW, and represented by the IAM&AW, would not become ACE employees until Monday, August 1, 2016 since TSS was responsible for full contract performance (R4, tab 64). (*See also* compl. ¶ 11; DeLong decl. ¶15)

18. By email dated June 24, 2016, 37 days before the end of the 60-day contract transition period, the Air Force transmitted a letter, also dated June 24, 2016, providing ACE the non-binding preliminary notice under FAR 52.217-9 of its intent to exercise Option I of the Contract. The transmittal email stated, "You can expect the option modification, with funding for this FY, in the next week or so. If you have any questions, let me know!" (R4, tab 33 at 1). The letter stated:

> 1. Pursuant to contract clause 52.217-9, *Option to Extend the Term of the Contract*, the Government hereby gives notice that Option I will be exercised by modification extending the performance period commencing 1 August 2016 through 31 July 2017.
>
> 2. This memorandum is a preliminary notice of the Government's intent and is not to be construed as exercising the option. Official exercise of the option will be accomplished by contract modification, Standard Form 30, signed by the Contracting Officer.

(R4, tab 33 at 2) CO DeLong did not send such notice to the IAM&AW (DeLong decl. at 3 ¶ 18). CO DeLong believed at that time that neither ACE nor any of its subcontractors had service employees that were covered by the CBA between TSS and the IAM&AW or were represented by the IAM&AW (*see* SUMF ¶ 16) (DeLong decl. ¶¶ 15-16). We find that, under the Contract, ACE was the "incumbent prime contractor" for purposes of FAR 22.1010.

19. On July 1, 2016 – one week after CO DeLong notified ACE of her intent to exercise Option I and 31 days before full performance would commence on August 1, 2016 – the Air Force and ACE bilaterally executed Modification No. P00001 to the Contract, exercising Option 1. Modification No. P00001 stated it was entered into

pursuant to the authority of FAR 52.217-9 and DFARS 252.232-7007[3]. Block E was checked "Contractor is required to sign this document. . . ." The purpose of the modification was: "[T]o exercise option 1 and provide incremental funding." The Option 1 period of performance was from August 1, 2016 through July 31, 2017. CO DeLong signed for the government and Sandra Chandler signed for ACE. (R4, tab 34 at 1, 63; DeLong decl. ¶ 19) The 91 page modification makes no mention of wages, the Service Contract Act (SCA) 41 U.S.C. §§ 6701 *et seq.*[4], the CBA and contains no release language.

20. We find that the CO did not provide the 30-day definitive written notification required by FAR 22.1010(b) to the IAM&AW collective bargaining agent (R4, tab 41 at 14 ¶ 7; DeLong decl. at 3 ¶ 18).

21. As of Friday, July 22, 2016 – the tenth day before commencement of the work under Option I – ACE and the IAM&AW had not yet agreed upon the terms of a new successor CBA to replace the CBA between TSS and the IAM&AW (DeLong decl. ¶ 20).

22. As of Friday, July 29, 2016 – the last business day before the beginning of the first option period – ACE and the IAM&AW had not yet agreed upon the terms of a successor CBA to replace the CBA between TSS and the IAM&AW (R4, tab 64; DeLong decl. ¶ 21).

23. On Monday, August 1, 2016, the Option I period began, requiring full contract performance by ACE, and the IAM&AW member employees went on strike. No service employees covered by the CBA between TSS and the IAM&AW or represented by the IAM&AW reported for work on that day (DeLong decl. ¶ 22). (*See also* app. mot. at 6, ASUMF ¶ 16; compl. ¶ 19)

24. By email on January 19, 2017, ACE provided the Air Force with an unsigned copy of a CBA between ACE and the IAM&AW. Another email in the email chain, from earlier that same day, indicates that subsequent to ACE and the IAM&AW having reached an agreement, they "update[d] article 9.2," requiring a new signature page (R4, tab 37).

25. On January 24, 2017, ACE submitted a request for equitable adjustment (REA) to the government, requesting, among other things, that the government incorporate the increased costs payable under the new CBA for the current year (i.e., Option Year 1), as well as for all remaining option years covered by the new CBA. Specifically, ACE's REA requested that the government incorporate into the Contract the

---

[3] DFARS 252.232-7007 Limitation of Government's obligation has to do with incremental funding and is not relevant to our decision.

[4] Previously cited as 41 U.S.C. §§ 351 *et seq.*

$1,744,330.37 in increased H&W benefits for the seven months of Option Year I (i.e., January 1, 2017 to July 31, 2017) provided for in the new CBA. (R4, tab 65)

26. By email on January 27, 2017, ACE provided the Air Force with a signed copy of the fully-consummated successor CBA between ACE and the IAM&AW, effective from November 20, 2016 until July 31, 2019 (R4, tabs 38-39). Despite the parties' "update" to article 9.2 of the CBA, discussed in the January 19, 2017 email from the IAM&AW to ACE (*see* SUMF ¶ 26), the signature page of the CBA states that it was signed on November 20, 2016 (R4, tab 39 at 32-33).

27. Although the effective date of the new CBA between ACE and the union was November 20, 2016, the increased H&W benefits for the Union contained therein did not go into effect, by the terms of the CBA, until January 1, 2017, after five full months of Option Year I had been performed. (R4, tab 39 at 27).

28. By letter dated March 30, 2017, the government denied ACE's REA request for the Option Year I H&W benefits, stating:

> The CBA was not considered timely IAW FAR 22.1002-3(b), and will be incorporated for the Option Year II period of performance effective 01 Aug 17 IAW FAR 52.222-43(c). Until that date the new CBA terms are not a part of this contract, therefore the Government denies the value that addresses this period -- $1,744,330.37.

(R4, tab 69 at 4)

29. On July 24, 2017, the Air Force unilaterally executed Modification No. P00026 to the Contract, exercising Option II and incorporating the CBA between ACE and the IAM&AW into the Contract effective August 1, 2017 (R4, tab 40).

30. On August 21, 2017, in response to the denial of its REA, ACE submitted a certified claim to the CO seeking $1,744.330.37 and requesting a final decision. ACE argued that the time limitations in FAR 22.1012-2(b) did not apply because the Air Force failed to provide the notification required by FAR 22.1010 to either ACE or the Union (R4, tab 41 at 1, 8-12, 14).

31. On January 22, 2018, the CO issued a final decision (COFD) denying ACE's claim on the grounds that the Preliminary Notice provided to ACE on June 24, 2016 satisfied the requirements of FAR 22.1010. Additionally, the CO noted:

> Though the notice did not meet the contract's 52.217-9 requirement for 60 days advance notice of intent to exercise

9

an option, this merely meant the option could not be
exercised unilaterally.  The contracting officer recognized
this and executed Option I as a bilateral modification, further
evidencing Alutiiq's understanding of, and consent to, a
delayed incorporation of any new CBA terms.

(R4, tab 44)

32.  On January 23, 2018, ACE timely filed a notice of appeal with the Board.
The Board docketed the appeal as ASBCA No. 61503 on January 24, 2018.

## DECISION

*Legal Standard for Summary Judgment*

We evaluate the cross-motions for summary judgment under the well-settled
standard:  Summary judgment is properly granted only where there is no genuine issue of
material fact and the movant is entitled to judgment as a matter of law.  The moving party
bears the burden of establishing the absence of any genuine issue of material fact and all
significant doubt over factual issues must be resolved in favor of the party opposing
summary judgment.  *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390
(Fed. Cir. 1987) (citations omitted).  In the course of the Board's evaluation of a motion
for summary judgment, our role is not "'to weigh the evidence and determine the truth of
the matter,' but rather to ascertain whether material facts are disputed and whether there
exists any genuine issue for trial."  *Holmes & Narver Constructors, Inc.*, ASBCA
Nos. 52429, 52551, 02-1 BCA ¶ 31,849 at 157,393 (quoting *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 249 (1986)).  A material fact is one which may make a difference in
the outcome of the case.  *Liberty Lobby*, 477 U.S. at 248.  The opposing party must assert
facts sufficient to show a dispute as to a material fact of an element of the argument for
reformation or breach.  *New Iraq Ahd Co.*, ASBCA No. 59304, 15-1 BCA ¶ 35,849
at 175,291-92 (citing *Mingus*, 812 F.2dat 1390-91) ("To ward off summary judgment, the
non-moving party must do more than make mere allegations; it must assert facts
sufficient to show a dispute of material fact."); *see Lee's Ford Dock. Inc.*, ASBCA
No. 59041, 16-1 BCA ¶ 36,298 at 177,010.

*Positions of the Parties*

ACE, relying on *Tecom, Inc.*, ASBCA No. 51591, 01 BCA ¶ 31,156 and *Raytheon
Service Co.*, ASBCA Nos. 28721, 29668, 86-3 BCA ¶ 19,094, contends that even though
its CBA was not finalized until after Option I was exercised, because the Air Force failed
to give the notice required by FAR 22.1010, ACE is entitled to a price adjustment under
FAR 52.222-43 for the first option year (app. mot. at 1-2, 10-13).  ACE argues that it was

the "incumbent contractor" because it was operating "under the base year"[5] and as such it was entitled to 30 days advance notice of the exercise of Option Year I. ACE also argues that the Air Force ignores *Tecom* and *Raytheon*. ACE contends that the cases the Air Force relies upon, *COSTAR III, LLC*, ASBCA No. 56479, 11-2 BCA ¶ 34,830 and *Guardian Moving & Storage Co. v. Hayden*, 421 F.3d 1268 (Fed. Cir 2005), do not involve the notice issue and are therefore distinguishable. (app. reply at 1, 6-11)

The Air Force argues that ACE "consummated" its CBA several months after the first option period began which was too late for it to be incorporated in the first option period (gov't mot. at 1, 10-12). The Air Force relies upon *COSTAR III, LLC*, ASBCA No. 56479, 11-2 BCA ¶ 34,830 and *Guardian Moving & Storage Co. v. Hayden*, 421 F.3d 1268 (Fed. Cir 2005) for the proposition that since the CBA was "consummated" well into the first option period it could not be effective until the second option period (gov't mot. at 10-12). The Air Force argues that the notice provisions cited by ACE "concern the prospective application of a CBA consummated during a predecessor contract to a successor contract, not the retroactive application of a CBA." (Gov't mot. at 12-13) The Air Force also argues that ACE was the "incumbent prime contractor" by virtue of the two month transition but since it did not employ "service employees" during that period of time, the notice requirements did not apply. (Gov't mot. at 16-17) The Air Force contends that it does not "shy away" from the Board's decisions in *Tecom* and *Raytheon* because in *Guardian* the Federal Circuit held that "wage determinations are not retrospective, regardless of the effective date of the underlying CBA." (Gov't surreply at 6)

*No Material Disputed Facts*

The Air Force contends that there are material disputed facts[6] defeating ACE's motion. The Air Force argues that whether ACE was the "incumbent contractor" or whether it employed "service employees" are material disputed facts. (Gov't surreply at 3-5) We disagree. We found that, for purposes of FAR 22.1010, ACE was indeed the incumbent contractor with regard to the exercise of the option under its own contract. (SOF ¶ 18) Likewise it is undisputed that TSS continued to employ all of its employees in its performance during the transition period (SOFs ¶¶ 15, 17). Therefore, that ACE did not employ TSS' workforce during the transition period cannot be disputed. Therefore, for the purpose of the FAR 22.1010 notice requirement, we hold ACE is the incumbent contractor even though it was only performing transition-in tasks and did not employ TSS' service employees until August 1, 2016.

---

[5] ACE was actually operating under a two month transition-in period before performance of Option 1 (SOF ¶ 10).

[6] This is at odds with the Air Force's letter, on behalf of both parties, dated January 25, 2018 (*see supra* footnote 1).

*The Air Force's Arguments*

The Air Force argues that the notice requirements only apply if the CBA was "consummated" during a predecessor contract. The argument is summed up in the Air Force's motion as: "The DOL regulations, and their reflections in the FAR, clearly establish that the notice requirements discussed in FAR 22.1010 and FAR 22.1012-2 concern the prospective application of a new or changed CBA, consummated during a predecessor contract, to a successor contract when the incumbent contractor fails to timely notify the CO of the new or changed CBA." (Gov't mot. at 13) The problem is, as ACE points out (app. reply at 1, 6-9), our decision in *Tecom* conflicts with the Air Force's argument. In *Tecom* the government issued unilateral Modification No. P00031 exercising the first option on September 30, 1997 for the period of October 1, 1997 through September 30, 1998. *Tecom*, 01-1 BCA ¶ 31,156 at 153,896. Tecom was both the "predecessor (incumbent) contractor and successor contractor." *Id.* at 153,897. The contracting officer did not provide Tecom with the 60-day *preliminary* written notice required by FAR 52.217-9(a) or the 30-day written *definitive* notice to either Tecom or the collective bargaining agent as required by FAR 22.1010(a). *Id.* (SOF ¶¶ 8, 18, 20) A new CBA was negotiated on September 18 and 19, 1997, but was not completed and signed until November 17, 1997 (*id.*). Thus, the CBA was not "consummated" during the predecessor contract. In *Tecom* this Board held that absent the mandatory written 30-day notice, Tecom was "entitled to seek a revised wage determination based on its new CBA for the first option year of the contract and that a contract price adjustment is appropriate under FAR 52.222-43" (*id.* at 153,902-03). Therefore, Tecom obtained relief even though its new CBA was not "consummated" during a predecessor contract but rather "consummated" during the first option period. The same was true in *Raytheon*, 86-3 BCA ¶ 19,094 at 96,524. In this case, the Air Force's interpretation of FAR conflicts with our decisions in *Tecom* and *Raytheon* and we find it is unreasonable. The Air Force's reliance on *Guardian Moving & Storage Co.*, ASBCA Nos. 54248, 54479, 04-2 BCA ¶ 32,753 and *COSTAR III, LLC*, ASBCA No. 56479, 11-2 BCA ¶ 34,830 (gov't mot. at 11-12) is misplaced because, as the parties recognize, the notice requirements were not raised and discussed by either party or the Board in these two cases.

Next the Air Force argues that since TSS, not ACE, was performing the substantive contract duties and ACE did not employ service employees during the transition-in period, the notice requirements did not apply (gov't mot. at 16-17). To the contrary, and as we explain in more detail below, the FAR 22.1010 notice requirements do apply to this very unusual situation even though ACE had no service employees. While TSS was performing the contract duties during the transition period, it was not the incumbent contractor with respect to the ACE contract. As a result, any attempt by the CO to provide the FAR 22.1010 notice to TSS would have been a futile exercise. The CBA between TSS and the union was incorporated into ACE Contract No. 0006 (SOF ¶¶ 14, 16). As we found, for the purpose of FAR 22.1010 notice, ACE is the

12

incumbent contractor. (SOF ¶ 18) During the transition period, the Air Force CO DeLong, knew that ACE and TSS' employees were negotiating employment and that ACE and the union were negotiating terms of a new CBA. (SOF ¶¶ 2, 15-18) The knowledge required by FAR 22.1010 to trigger the notice requirement is:

> (a) The contracting officer should determine whether the incumbent prime contractor's or its subcontractors' service employees performing on the current contract are represented by a collective bargaining agent. If there is a collective bargaining agent, the contracting officer shall give both the incumbent contractor and its employees' collective bargaining agent written notification of

> . . . .

> (2) The forthcoming contract modification and applicable acquisition dates (exercise of option, extension of contract, change in scope, or start of performance, as the case may be)

> . . . .

(SOF ¶ 8) It is true, as the Air Force points out, that ACE did not employ service employees performing the contract because those employees were still employed by TSS and were performing the contract during transition. However, that circumstance was caused by the unusual transition period arrangement peculiar to this contract. Significantly, the notice is to the union not the individual employees so we do not see how the absence of employees matters. We consider the government's knowledge to be the essence of FAR 22.1010(a), not whether ACE employed service employees performing the contract. The duties placed upon the contracting officer are substantial and will not be dismissed hastily.

As set forth in *Tecom:*

> FAR 22.1010 not only provides for the same 30 days notification to the contractor and collective bargaining agent, but it also places an affirmative duty on the contracting officer to determine whether the service contract employees are represented by a union before giving the notification (finding 13). FAR 22.1008-3(a) further provides that the contracting officer (shall) determine whether Section 4(c) of the SCA applies to the option period and (shall) determine

13

> whether there is a predecessor contract and, if so, whether there is an existing CBA (finding 20).

*Tecom* 01 BCA ¶ 31,156 at 153,900-901. CO DeLong knew TSS employees were covered by a CBA and would be covered by a new CBA when employed by ACE (SOF ¶¶ 14 - 17, 20). We hold that CO DeLong had the requisite knowledge required by the notice requirement of FAR 22.1010 and we will not ignore that fact simply because TSS' employees were not yet employed by ACE. To agree with the Air Force's arguments would be inconsistent with the SCA protections built into FAR Part 22. Accordingly, we decline to adopt the Air Force's argument.

*Bilateral Modification No. P00001*

Before deciding which party prevails in this appeal, we must analyze the impact, if any, of bilateral Modification No. P00001. On June 24, 2016, the Air Force forwarded ACE a preliminary notice of the option exercise, and stated that ACE could expect the modification exercising Option 1, with funding for this fiscal year, "in the next week or so" (SOF ¶ 18). No other notice was provided by the Air Force. The record reflects that the CO issued the modification exercising Option I bilaterally because the 60-day preliminary notice requirement of the contract (FAR 52.217-9) had not been meet. (SOF ¶ 31). We recognize that once the Air Force failed to provide timely preliminary notification to ACE, it lost its ability to exercise the option unilaterally, and could only exercise the option by agreement of the parties. *See generally Arko Executive Services, Inc. v. U.S.*, 553 F.3d 1375 (Fed. Cir. 2009); *Griffin Services, Inc.*, ASBCA Nos. 52280, 52281, 02-2 BCA ¶ 31,943; *USD Technologies, Inc.*, ASBCA No. 31,305, 87-2 BCA ¶ 19,680, *aff'd*, 845 F.2d 1033 (Fed. Cir. 1988) (Government has the burden to prove that it timely exercised an option); *Star Contracting Co.*, ASBCA No. 27848 *et al.*, 89-2 BCA ¶ 21,587 at 108,700 (Government failed to establish timely exercise). It was the government's recognition of its failure to provide notice as required by FAR 52.217-9(a), that dictated the contracting officer's request for a bilateral modification. (SOF ¶ 31)

While the parties recognize that Modification No. P00001 was bilateral, neither party appears to have considered whether that fact is of any significance to the question before us. As a result, the Board asked the parties to comment. In the letter to the Board dated March 4, 2019, the Air Force simply acknowledged that the bilateral exercise "constitutes an additional distinction between the facts in the current appeal and those material to the decisions in" *Tecom* and *Raytheon*. ACE provided a more detailed response. ACE contended, in its letter to the Board dated March 15, 2019, that the bilateral exercise is not (material) arguing "neither *Raytheon* nor *Tecom* rested on the unilateral exercise of option years but rather on the Air Force's failure to comply with the 30-day notification requirement, which is 'strictly enforced.'" ACE correctly notes that "Modification P00001 had to be issued bilaterally because the Air Force failed to provide timely preliminary notice under FAR 52.217-9." (ACE's March 15, 2019 resp.)

14

Although both *Tecom* and *Raytheon* involved unilateral option exercises extending the contract, we hold that the manner of exercising the option is an immaterial distinction. *See Tecom*, 01-1 BCA ¶ 31,156 at 153,896; *Raytheon*, 86-3 BCA ¶ 19,094 at 96,524. ACE notes further that "By signing the modification, ACE agreed to the option year, not to relinquish rights *sub silento*. No authority holds that noncompliance with notice requirements with respect to options is excused by a bilateral modification; on the contrary, such requirements 'are strictly enforced.'" (ACE's March 15, 2019 resp.) Our cases resolutely demand strict enforcement of notice provisions with respect to options. *See generally Tecom, Inc.*, ASBCA No. 51591, 01 BCA ¶ 31,156; *Raytheon Service Co.*, ASBCA Nos. 28721, 29668, 86-3 BCA ¶ 19,094.

In the simplest terms, Modification No. P00001 provided for the exercise of Option Period I and the incremental funding of $39,640,220.00. In the 91 pages that make up Modification No. P00001, the contracting officer set forth in excruciating detail the various CLINs, acceptance/inspection schedules, funding, and revisions of contract clauses. While the modification includes a reference to FAR 52.217-9 in Block 13-C, there is no reference to FAR 22.1010. The modification is also silent as to the incorporation of the CBA and lacks any release language. (SOF ¶ 19) In analyzing the reach of this modification, common sense must dictate.

As we have observed, "[i]n the realm of Government contracts, absent mistake or duress not present here, few things signify knowing and intentional conduct more than does the execution of a bilateral modification." *USD Technologies, Inc.*, ASBCA No. 31305, 87-2 BCA ¶ 19,680 at 99,620. In *Bell BCI Co. v. United States*, 570 F.3d 1337, 1340 - 41 (Fed. Cir. 2009), the Court explained the familiar law of accord and satisfaction occurs "when some performance is different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim" (quoting *Cmty. Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1581 (Fed. Cir. 1993)). To prove accord and satisfaction, the government must show "(1) proper subject matter; (2) competent parties; (3) a meeting of the minds of the parties; and (4) consideration." *O'Connor v. United States*, 308 F.3d 1233, 1240 (Fed. Cir. 2002). In this opinion we only need to address element three. Critical to the existence of accord and satisfaction is the intention of the parties. What happens and is discussed during negotiations of a settlement and payment will operate as an accord and satisfaction only as to the claims considered. *Tri-O, Inc. v. United States*, 28 Fed. Cl. 463, 470-72 (1993).

We look to the modification as the primary source of the parties' intentions. Recognizing that the exercise of an option must be unconditional and set forth terms that are in accord with the option, any attempt by the government to alter the terms of the contractor's obligation under an option will render ineffective the purported exercise of the option. *See generally Lear Siegler, Inc., Mgmt. Servs. Div.*, 86-3 BCA ¶ 19,155 at 96,795 (insertion of Availability of Funds clause); *Chem. Tech., Inc.*, ASBCA

No. 21863, 80-2 BCA ¶ 14,728 (altering period of performance); *General Dynamics Corp.*, ASBCA No. 20882, 77-1 BCA ¶ 12,504 (altering delivery schedule). In this case, an attempt by the government to exercise the option by issuing a unilateral modification without satisfying the notice requirements of FAR 52.217-9, would have varied the terms of the option. The purported exercise of Option 1 by unilateral modification would have been ineffective. Recognizing this, the contracting officer proposed that the exercise take place by agreement of the parties. Subsumed in that agreement is the acknowledgement that ACE would waive the preliminary notice requirements set forth in FAR 52.217-9, that was preventing the government from exercising what would have been an ineffectual option. By signing Modification No. P00001, ACE accepted the exercise of the option and relinquished its rights to escape performance because of the untimely notice. In that respect the modification is clear and unambiguous and we give it its plain meaning. *Hughes Commc'ns Galaxy, Inc. v. United States*, 998 F.2d 953, 958 (Fed. Cir. 1993).

The question remaining is whether the bilateral modification also resulted in an unwitting relinquishment of ACE's rights to a second and distinctly separate notification requirement set forth in FAR 22.1010(a). In other words, does the bilateral modification exercising the option, without more, prevent ACE from receiving a price adjustment for increased labor costs incurred under the new CBA during the first option year? The effect of the bilateral exercise is a question of law that does not preclude summary judgment. We will not extend the consequences of the bilateral modification to include a waiver of a distinctly separate notice requirement which, if not given, allows for a price adjustment under FAR 22.1012-2, without a clear and unequivocal intention to do so in the document. In the appeal before us, ACE maintains that there was an intention to agree to the option year, nothing more, and nothing less. ACE maintains, and we agree, that the failure to issue timely preliminary notice under FAR 52.217-9, *which necessitated a bilateral modification*, does not absolve the Air Force of its failure to provide the mandatory 30-days notice under FAR 22.1010. The Air Force cannot use one failure to excuse another. Moreover, the June 24, 2016 preliminary notice provided under FAR 52.217-9 cannot be used to meet the notice requirement of FAR 22.1010. The notices requirements of FAR 52.217-9 and FAR 22.1010 are separate and distinct notices.

Waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Alvarez & Assocs. Constr. Co.*, ASBCA No. 49341, 98-1 BCA ¶ 29,559 at 146,536. "An intent to waive a contractual right must be manifest in a party's failure to object." *United Technologies Corp.*, Pratt & *Whitney Grp.*, ASBCA No. 46880 *et al.*, 95-1 BCA ¶ 27,592 at 137,482 (citations omitted). In answering the question whether the bilateral modification extended to the mandatory notice requirement of FAR 22.1010, we must give the modification its plain meaning. In doing that, we find that the clear and unambiguous language of the bilateral modification does not manifest an unequivocal intention by ACE to relinquish its rights and/or the rights of the collective bargaining agent to the 30-day definitive notice under

16

FAR 22.1010. We find that the plain language of the modification does not purport to resolve anything other than the exercise of the option and was never intended to do anything other than exercise Option I.

Even if this bilateral modification can be interpreted to include a waiver of the notice requirements pursuant to FAR 22.1010(b), the contracting officer does not have the authority to waive requirements imposed by statute. *Shawview Cleaners, LLC*, ASBCA No. 56938, 10-2 BCA ¶ 34,550 at 170,394 (Government employees, including contracting officers, have no authority to waive compliance with the SCA, notwithstanding allegation that agency personnel fraudulently induced the contractor to enter a contract by misrepresenting the wage determination as non-mandatory); *Inter-Continental Equip., Inc.* ASBCA No. 36807, 94-2 BCA ¶ 26,708 at 132,862-63 (the contracting officer, by action or inaction, cannot waive the requirements of the Cargo Preference Act of 1904, 10 U.S.C. § 2631); *LaCoste Builders, Inc.* ASBCA No. 29884 *et al.*, 88-1 BCA ¶ 20,360 at 102,981-82 (contracting officer had no authority to waive Buy American Act, exceptions not shown). Similarly, in *M-R-S Mfg. Co. v. United States*, 492 F.2d 835, 841 (Ct. Cl. 1974), the plaintiff argued that since the government ignored the data developed between March 23 and August 17, the contracting officer waived the contractor's obligation to furnish accurate, complete, and current data. The Court stated that "[t]he most basic flaw in this argument is the assumption that the obligation to furnish proper data can be waived by a government agent. The duty to furnish accurate, complete, and current data is a duty imposed on Government contractors by a statute, and, therefore, that duty cannot be waived by a Government agent." *Id. (citations omitted).*

The Service Contract Act (SCA), 41 U.S.C. §§ 6701 *et seq.*, and implementing regulations promulgated by the DOL at 29 C.F.R. Part 4 (1993 ed.) and also published in the FAR at 48 C.F.R. Subpart 22.10 (1990 ed.) is remedial labor legislation which must be liberally construed.[7] *Midwest Maint. & Constr. Co. v. Vela*, 621 F.2d 1046, 1050 (10th Cir. 1980). The implementing regulations and contract clauses should be similarly so construed to effect the purposes of the Act. The SCA was designed to protect wages

---

[7] SCA provisions will apply to a government contract even where they were left out of the solicitation or the contract. *Miller's Moving Co.*, ASBCA No. 43114, 92-1 BCA ¶ 24,707 at 123,325-26. "It is well settled that if a statute requires inclusion of a contract provision, such provision will be read into the contract by operation of law, and is binding on the parties even if omitted from the contract terms. *G.L. Christian and Associates v. United States,* 312 F.2d 418 (Ct. Cl. 1963) on rehearing, 320 F.2d 345, cert. denied, 375 U.S. 954 (1963). Obligatory congressional enactments cannot be abrogated by failure of Government officials to include necessary provisions in the contract." G.L. Christian, on rehearing, supra.

and fringe benefits of service workers employed on U.S. Government contracts. 41 U.S.C. §§ 6703, 6707. The DOL issues "wage determinations" applicable to fixed-price services contracts and through a series of contract clauses, contractors are forbidden from paying less than the wages and fringe benefits contained in a wage determination. *See* 41 U.S.C. §§ 6701 *et seq.* In this way, the SCA prevents contractors from underbidding competitors by cutting wages or fringe benefits to its service workers and thereby winning government contracts. *See Lear Siegler Servs., Inc. v. Rumsfeld*, 457 F.3d 1262, 1266 (Fed. Cir. 2006); *Gov't. Contracting Res., Inc.*, ASBCA No. 59162, 15-1 BCA ¶ 35,916 at 175,575. There is a direct statutory obligation imposed by the SCA that the contracting officer could not waive by bilateral modification or by other means.

In accordance with FAR 22.1010(b), the contracting officer was required to provide written definitive notice of the exercise of the option to both the incumbent contractor and the collective bargaining agent. In this case, the written notification was required to be given "at least 30 days in advance of the earliest applicable acquisition datc[8] in order for the time-of-receipt limitations in paragraphs 22.1012(a) and (b) to apply." That notification is mandatory to both the incumbent contractor and the union; providing notice to one will not suffice. *See Tecom*, 01-1 BCA ¶ 31,156 at 153,902; *Raytheon*, 86-3 BCA¶ 19,094 at 96,527. As in *Tecom*, it is uncontested that the contracting officer did not comply with these regulatory duties. (SOF ¶ 18, 20); *See Tecom* 01-1 BCA ¶ 31,156 at 153,903. FAR 22.1012-2(c) very clearly sets out that the "limitations in paragraphs (a) and (b) of this subsection *shall apply only if timely notification* required in 22.1010 has been given" (emphasis added). (SOF ¶ 9) *Tecom*, 01-1 BCA ¶ 31,156 at 153,902; *Raytheon*, 86-3 BCA ¶ 19,094 at 96,528. Accordingly, the contracting officer cannot reject a price adjustment resulting from a new CBA executed during the option period when it fails to provide the mandatory notice under FAR 22.1010. *See Tecom, Inc.*, 01-1 BCA ¶ 31,156 at 153,902-3. We agree with appellant that there is no material distinction between this case, *Raytheon* and *Tecom*.

We held in *Tecom* where timely notification is not given to both the contractor and the collective bargaining agent, the deadlines set forth in FAR 22.1012-2(b) do not apply and there is "no restriction against incorporation of a new or changed CBA received after contract award." *Tecom*, 01-1 BCA ¶ 31,156 at 153,902. We will not depart from the results reached in *Raytheon* and *Tecom*.

---

[8] Even though FAR 22.1010(b) provides that the 30 days advance notice is triggered by either the "earliest applicable acquisition date or the applicable annual or biennial anniversary date", because of the unusual nature of the ACE contract, there could not be an annual anniversary date for the first option. The base contact began June 1, 2016 and ended July 31, 2016. The first of five options, if exercised, was August 1, 2016 which would then establish an annual anniversary date for options 2 through 5.

Having failed to provide the 30-day notice required by FAR 22.1010(b) to ACE and the collective bargaining agent (SOF ¶¶ 18, 20), the time-of-receipt limitations set forth in FAR 22.1012-2 do not apply. Accordingly, we conclude that ACE is entitled to a price adjustment under FAR 52.222-43 for the increased labor costs associated with the new CBA executed after the option was exercised.

## CONCLUSION

For the reasons stated, the government's motion for summary judgment is denied. Appellant's cross-motion for summary judgment is granted. The appeal is returned to the parties for a determination of quantum consistent with this decision.

Dated: January 9, 2020

STEPHANIE CATES-HARMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

19

I was the judge originally assigned to this case and wrote the original decision. While my colleagues adopted the majority of my facts and some of my analysis, they disagree with my conclusion. I respectfully dissent, because I do not believe that the notice requirements that my colleagues rely upon apply to the bilateral option exercise in this case.

*Option 1 was Exercised Bilaterally*

In a June 24, 2016 email to ACE transmitting preliminary notice of option exercise, the Air Force stated that ACE could expect the modification exercising Option 1 "next week or so" (SOF ¶ 18). No other notice was provided by the Air Force. When ACE received Modification No. P00001, Block E was checked "Contractor is required to sign this document . . . ." (SOF ¶ 19). In the majority decision, my colleagues speculate about the contracting officer's (CO) motivation in requiring a bilateral exercise:

> It was the government's recognition of its failure to provide notice as required by FAR 52.217-9(a), that dictated the contracting officer's request for a bilateral modification.
>
> . . . .
>
> The purported exercise of Option 1 by unilateral modification would have been ineffective. Recognizing this, the contracting officer proposed that the exercise take place by agreement of the parties. Subsumed in that agreement is the acknowledgement that ACE would waive the preliminary notice requirements set forth in FAR 52.217-9, that was preventing the government from exercising what would have been an ineffectual option.
>
> . . . .
>
> ACE maintains, and we agree, that the failure to issue timely preliminary notice under FAR 52.217-9, *which necessitated a bilateral modification*, does not absolve the Air Force of its failure to provide the mandatory 30-days notice under FAR 22.1010.

(Emphasis in original) This speculation is unsupported by evidence.

On July 1, 2016, ACE, Ms. Chandler, and the Air Force, CO DeLong, signed Modification No. P00001 bilaterally exercising Option 1 (SOF ¶ 19). The effect of the bilateral exercise is a question of law that does not preclude summary judgment.

*The Notice Requirements Apply to Options Exercised Unilaterally*
FAR 2.101 defines option as:

> Option means a *unilateral right* in a contract by which, for a specified time, the Government may elect to purchase additional supplies or services called for by the contract, or may elect to extend the term of the contract.

(Emphasis added) Based on the FAR definition of option as a unilateral right to extend a contract, I conclude that the term "option" as used in FAR 22.1010, FAR 52.222-43 and FAR 52.217-9 means an option exercised unilaterally. Therefore, the notice requirement in FAR 22.1010(b) only applies when the option is exercised unilaterally. To hold otherwise, as my colleagues do, requires the Board to ignore the definition of "option" in FAR 2.101. My colleagues simply hold "that the manner of exercising the option is an immaterial distinction." This is the fundamental disagreement we have that necessitates my dissent.

This Board relied on the FAR 2.101 definition of option in *Glasgow Investigative Solutions, Inc.*, ASBCA No. 58111, 13 BCA ¶ 35,286 where we held:

> Turning to the merits of GIS's assertion, FAR 52.217-8 provides: "The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months" (SOF ¶ 4). GIS ignores the fact that the FAR 52.217-8 clause expressly gives the government the unilateral right to extend contract performance. FAR 2.101 defines "Option" as "a unilateral right in a contract by which, for a specified time, the Government may elect to . . . extend the term of the contract." Mod. P00003 bilaterally amended the contract to restructure its base contract and option performance periods. Because it was a bilateral restructuring of the contract, it did not rely on FAR 52.217-8 and modified the contract in respects that do not rely on the authority provided in FAR 52.217-8 (SOF ¶ 5). We hold that Mod. P00003 did not exhaust, or use up any of the government's FAR 52.217-8 extension rights. The government retained the ability to extend performance for six months when it did so

21

through Mods. P00007 through P00011. Hence, they were valid.

(*Id.* at 173,176) As seen in the quote above, because FAR 2.101 defines "Option" as a unilateral option, we interpreted the word "option" in FAR 52.217-8 as a unilateral option exercise. We held that because Modification No. P00003 was bilateral, it did not rely on the authority provided by FAR 52.217-8. FAR 52.217-8 is in ACE's Contract No. 0006. (R4, tab 32 at 194) If the "option" in FAR 52.217-8 is interpreted by this Board as only a unilateral option based on FAR 2.101, so too should the term "option" in FAR 22.1010, FAR 52.222-43 and FAR 52.217-9. I believe the language in *Glasgow* I rely upon and quoted above is not dicta and is Board precedent that we are obligated to follow. *Advanced Eng'g & Planning Corp.*, ASBCA Nos. 54044, 53366, 05-1 BCA ¶ 32,935 at 163,127 ("We are bound by our precedent."); *PCA Health Plans of Tex., Inc.*, ASBCA No. 48711, 98-2 BCA ¶ 29,900 at 148,014 ("A decision by the Board is deemed binding precedent in another appeal unless the decision is reversed or otherwise modified by the Board's Senior Deciding Group or the court of appeals.")

*Notice Requirement Waiver*

My colleagues rely heavily on an argument that nothing in bilateral Modification No. P00001 exercising Option 1 waived the 30-day notice requirement in FAR 22.1010. I guess this means the Air Force was required to provide the FAR 22.1010(b) 30-day notice no later than June 1, 2016 which is 30 days before Option 1 was exercised but 60 days before the Option 1 performance period began on August 1, 2016. This assumes that the term "option" in FAR 22.1010(a)(2) can be interpreted to include a bilateral option exercise. As shown above, that is not how this Board defined "option" in *Glasgow*. If the notice provisions only apply to unilateral option exercises, as I argue, there is nothing to waive.

*This Board has Recognized the Reciprocal Benefits in FAR Provisions*

*Tecom, Inc.*, ASBCA No. 51591, 01-01 BCA ¶ 31,156 and *Raytheon Service Co.*, ASBCA Nos. 28721, 29668, 86-3 BCA ¶ 19,094, are cases that explain the reasoning behind the notice requirements. *Raytheon* teaches us two important lessons. First, that the FAR provisions providing a cut-off date for the applicability of a new or revised CBA benefits the government, and provisions requiring mandatory written notice benefit the contractor: "Like the cut-off date for revised wage determinations benefits the Government, the 30-day notice benefits the contractor." *Raytheon*, 86-3 BCA ¶ 19,094 at 96,527. Our decision in *Tecom* recognizes what we held in *Raytheon*:

> Further, as our decision in *Raytheon* makes clear, the 30-days notification requirement is intended to benefit the contractor: "Since the [Government] did not provide the

22

> notice, which would have been for [Tecom's] benefit, the [Government] cannot at the same time benefit from its failure to abide by the regulations by denying [Tecom] the opportunity to obtain a revised waged determination based upon the new CBA.

*Tecom*, 01-1 BCA ¶ 31,156 at 153,902.

In *Raytheon* the Board considered the fundamental fairness of the situation:

> But here, because the Air Force was aware that appellant was conducting labor negotiations, DAR 12 – 1005.2(b)(2) required the Air Force to give notice at least 30 days prior to the start of the option period. The need for the 30 – day notice is understandable when we consider the precarious position of all interested parties when a collective bargaining agreement is being negotiated and the Air Force has given only preliminary notice that the underlying contract will be extended through an option. The contractor and the labor representatives are not assured of a continued contract with the Government, and the Government cannot determine the actual labor costs that will be incurred during the option period. Here, the notice should have warned the negotiating parties of a deadline. Instead the appellant was lulled into complacency.

*Raytheon*, 86-3 BCA ¶ 19,094 at 96,527. ACE and its union could not be "lulled into complacency" because ACE participated in the exercise of the option 30 days before the start of the first option year. There was no uncertainty over the fact that the contract would continue into the first option year. There was no unknown deadline. ACE and its union knew on July 1, 2016 that they had 30 days to complete negotiation of the new CBA. For whatever reason, they did not finalize the CBA before ACE started performing during the first option year (SOF ¶¶ 21-23). The new CBA was eventually agreed to and signed on November 20, 2016. ACE then claimed $1,744,330.37 for the increased costs resulting from the new CBA for January 1, 2017 through the end of the first option year. (SOF ¶¶ 25-27) Under these circumstances, I would not hold the Air Force liable for ACE's failure to finalize and sign the new CBA before the start of performance of the first option year.

*ACE Failed to Protect Itself*

When the Air Force asked ACE to sign Modification No. P00001 bilaterally exercising Option 1, ACE was in control of the transaction. The preliminary notice was

23

only seven days before Modification No. P00001 was signed and 37 days before expiration of the transition period and start of the first option year. (SOF ¶¶ 18-19) ACE knew it was negotiating a new CBA with the union. ACE knew that the costs to the Air Force would increase under the new CBA. ACE knew it would seek the higher costs embodied in the new CBA during Option Year 1. ACE could have refused to sign Modification No. P00001 until the matter of the new CBA was resolved with the union and the Air Force. Faced with ACE's refusal, had the Air Force unilaterally exercised the option and had ACE accepted the contract extension, ACE was protected by *Tecom* and *Raytheon* because the Air Force clearly failed to provide the notice required by FAR 22.1010. Since the modification was exercised bilaterally, our decisions in *Tecom* and *Raytheon* simply do not apply. The situation is now closer to *COSTAR III, LLC*, ASBCA No. 56479, 11-2 BCA ¶ 34,830 and *Guardian Moving & Storage Co. v. Hayden*, 421 F.3d 1268 (Fed. Cir. 2005), where the CBA was finalized during the current option year and we held that it was not effective until the next option year. The same is true in this case. The CBA was finalized on November 20, 2016, during the first option year. I would not compel the Air Force to increase its payments to cover the new CBA until the second option year. This is a reasonable result in this case that balances the reciprocal benefits in the FAR provisions recognized by this Board.

For the reasons stated above, I would grant the Air Force's motion, deny ACE's motion and deny ACE's appeal.

Dated: January 9, 2020

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61503, Appeal of Alutiiq Commercial Enterprises, LLC, rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals