# United States Court of Appeals for the Federal Circuit

05-1086

GUARDIAN MOVING AND STORAGE COMPANY, INC.,

Appellant,

v.

Lt. Gen. Michael V. Hayden, DIRECTOR, NATIONAL SECURITY AGENCY,

Appellee.

Jed J. Babbin, Connor & Hannan, L.L.P., of Washington, DC, argued for appellant.

John E. Kosloske, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC. On the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Steven J. Gillingham, Senior Trial Attorney. Of counsel on the brief was William R. Buonaccorsi, Trial Attorney, Office of Counsel National Security Agency, of Fort George G. Meade, Maryland. Also, of counsel was Thomas D. Dinackus.

Appealed from: Armed Services Board of Contract Appeals

# United States Court of Appeals for the Federal Circuit

05-1086

GUARDIAN MOVING AND STORAGE COMPANY, INC.,

Appellant,

v.

Lt. Gen. Michael V. Hayden, DIRECTOR, NATIONAL SECURITY AGENCY,

Appellee.

_____

DECIDED:  August 9, 2005

_____

Before MICHEL, Chief Judge, NEWMAN and LINN, Circuit Judges.

MICHEL, Chief Judge.

Guardian Moving and Storage Company, Inc. (Guardian) appeals the decision of the Armed Services Board of Contract Appeals (Board) that Guardian is not entitled to a price adjustment under FAR 52.222-43 for the increased costs it paid its employees under its contract with the National Security Agency (NSA or Agency) during two contract renewal periods, from October 1 to November 30, 2002 and from December 1, 2002 to January 31, 2003.  Guardian Moving & Storage Co., Inc., ABSCA Nos. 52248, 54479, 2004-2 B.C.A. ¶ 32, 753.  This case was submitted for decision following oral argument on July 5, 2005.  Because we hold that the Board erred in ruling that Guardian is not entitled to a price adjustment for the December 1, 2002 to January 31, 2003 contract renewal period, we reverse that portion of the Board's decision and

remand for further proceedings. We affirm the Board's decision with respect to the October 1 to November 30, 2002 contract renewal period.

BACKGROUND

The dispute before us arises from a contract between Guardian and NSA's Maryland Procurement Office for cartage and drayage services. The original contract concerned services performed between November 20, 2000 and September 30, 2001 (base period contract). NSA exercised its option to extend contract performance for fiscal year 2002, from October 1, 2001 to September 30, 2002. NSA, however, declined to renew the contract for fiscal year 2003. On July 11, 2002, NSA notified Guardian that, although it planned to award a new contract for cartage and drayage services for fiscal year 2003, it did not intend to exercise the option to extend Guardian's contract for that time period. Nonetheless, on September 6, 2002, NSA requested that Guardian extend the existing contract from October 1 to November 30, 2002 (October extension). Similarly, on October 29, 2002, NSA requested an extension of the Guardian contract from December 1, 2002 to January 31, 2003 (December extension).

The base period contract, as well as all subsequent renewals, were subject to the requirements of the Service Contract Act of 1965, as amended, 41 U.S.C. § 351 et seq. (SCA), which requires that service employees receive no less than the wages and fringe benefits they would have been entitled to under the predecessor contract with the federal government for substantially the same services. Section 4(c) of the SCA provides, in relevant part:

> No contractor or subcontractor under a contract, which succeeds a contract subject to this Act and under which substantially the same services are furnished, shall pay any service employee under such contract less than the wages and fringe benefits, including accrued wages

and fringe benefits, and any prospective increases in wages and fringe benefits provided for in a collective-bargaining agreement as a result of arm's-length negotiations, to which such service employees would have been entitled if they were employed under the predecessor contract . . . .

41 U.S.C. § 353(c). Section 4(c) is self-executing. 29 C.F.R. § 4.163(b) (characterizing Section 4(c) as a "direct statutory obligation" that is "not contingent or dependent upon the issuance or incorporation in the contract of a wage determination based on the predecessor contractor's collective bargaining agreement").

The wages and fringe benefits received by Guardian's employees during the base period contract were governed by the Department of Labor's (DOL) Wage Determination 1986-1348, Revision 11 (WD 11) dated October 13, 2000. WD 11, in turn, was based on a Collective Bargaining Agreement (CBA) dated December 26, 1995 and supplemented on September 20, 2000. WD 11 also applied to the fiscal year 2002 renewal period.

On September 24, 2002, Guardian sent NSA a copy of a new CBA entered into that day with the local chapter of the AFL-CIO (Union), effective from October 1, 2002 to October 30, 2004 (New CBA). The New CBA specified that

> [t]his agreement is made on the condition that, and shall be effective only if, the U.S. Department of Labor ("DOL") issues a wage determination with an effective date of October 1, 2002, made applicable to the contract(s) under which Union employees are performing at the NSA facility . . . , which adopts the provisions herein regarding wages and health and welfare benefits.

On September 26, 2002, NSA issued to DOL a "Notice of Intention to Make a Service Contract and Response to Notice" on Standard Form 98 (SF 98) with a copy of the New CBA. In that communication, NSA also requested review of the New CBA, stating that it was "made on the condition that the U.S. Department of Labor issue a wage

determination with an effective date of October 1, 2002," and thus did "not appear to be the result of 'arms-length' negotiation."

Despite NSA's concerns, on November 12, 2002, DOL issued Wage Determination 1986-1348, Revision 12 (WD 12), incorporating the wage rates and fringe benefits of the New CBA. Several days later, NSA renewed its request that DOL review the contingency clause of the New CBA. On December 18, 2002, DOL determined that "[u]pon further review of the CBA, it was determined that the CBA does contain contingency language and WD 86-1348 (Rev. 12) has been rescinded." Accordingly, DOL directed that WD 12 not be incorporated into the December extension. DOL gave Guardian three options: (1) to remove the contingency clause from the CBA and request that NSA resubmit a new SF 98 to DOL; (2) to accept and apply WD 11; or (3) to appeal DOL's arm's-length finding under 29 C.F.R. § 4.11. DOL further informed the parties that in the event they decide to remove the contingency clause, once the objectionable language has been deleted, the self-executing provision of Section 4(c) will apply.

Guardian and the Union deleted the contingency clause from the New CBA by addendum of January 10, 2003 (Amended CBA). On January 23, 2003, NSA extended Guardian's contract from February 1 to February 14, 2003 (February extension). Several subsequent agreements extended Guardian's contract with NSA through March 29, 2003 (March extensions).

Based on the Amended CBA, DOL reissued WD 12 on February 14, 2003 without any substantive changes from its prior, November 12, 2002 issuance. In response to an inquiry from NSA regarding the effect of the January 10 addendum on

the New CBA, DOL issued Wage Determination 1986-1348, Revision 13 (WD 13) on February 27, 2003, acknowledging the January 10, 2003 amendment.

In May 2003, Guardian filed a claim with the contracting officer (CO), claiming entitlement to a price adjustment in the amount of $372,897.82 for the cost of increased wages incurred under the NSA contract between October 1, 2002 and March 29, 2003. After the CO issued a final decision denying Guardian's claims for all extension periods, Guardian timely appealed to the Board.

Before the Board, Guardian moved for summary judgment, claiming entitlement to a price adjustment under FAR 52.222-43 for wage increases paid under the NSA contracts during the October, December, February, and March extensions. In its final decision, the Board ruled that Guardian was entitled to a price adjustment for the February and March extensions. The Board, however, denied relief for the October and December extensions, reasoning that NSA had no obligation to reimburse Guardian the wages paid under the New CBA:

> Receipt of the 24 September 2002 CBA with a contingency clause was ineffective because DOL found it did not result from arm's-length negotiations. Receipt of the 10 January 2003 addendum to appellant's CBA rendered the government obligated to reimburse appellant for prospective wage increases under the bilateral modifications that were subsequent new contracts. When it received the 10 January 2003 addendum to the new CBA, NSA became obligated to incorporate a new wage determination in its new contracts. The next contract extension was issued on 23 January 2003, for the period beginning 1 February 2003.

The Board held that "[w]age and benefit increases that the government is obligated to reimburse under the Price Adjustment clause are to be prospective and are to be implemented in accordance with the wage determination scheme in the SCA and regulations related thereto." Accordingly, the Board concluded that Guardian was

entitled to a price adjustment only for the February and March extensions — entered into "after 10 January 2003, the date [Guardian] and the Union executed the addendum to the new CBA required for issuance of a revised wage determination." The Board remanded the matter for the parties to negotiate the quantum of adjustment for the February 1 to March 29, 2003 period.

Guardian timely appealed to this court. We have jurisdiction to hear Guardian's appeal under 41 U.S.C. § 607(g)(1)(A).

## ANALYSIS

The Contract Disputes Act, 41 U.S.C. § 609(b) (2000) (CDA), governs this court's review of Board decisions. While the CDA provides for deferential review of the Board's factual findings, it specifies that the Board's decision "on any question of law shall not be final or conclusive" — we review the Board's legal conclusions de novo. Eastman Kodak Co. v. Rumsfeld, 317 F.3d 1377, 1379 (Fed. Cir. 2003).

Guardian presents four theories for recovery on appeal. The first two pertain to both the October and December extensions, while the second two relate only to the December extension. First, Guardian claims that it is entitled to a price adjustment from October 1, 2002 under FAR 52.222-43(d)(1), because WD 13 required compliance with the CBA "effective October 1, 2002" and was thus applicable at the beginning of the renewal option period. Second, Guardian contends it should recover under FAR 52.222-43(d)(2) based on application of Section 4(c) and 29 C.F.R. § 4.163(b), which require wages and benefits in a CBA to be recognized as the minimum wages and benefits for subsequent new contracts by operation of law. Guardian argues that it was obligated by law to accord the wages and benefits in the New CBA as of its effective

date, October 1, 2002, notwithstanding the rescission of WD 12. Indeed, Guardian argues that because the contingency clause in the New CBA — really a condition precedent — was satisfied with the issuance of WD 12, that clause, from a legal standpoint, ceased to exist. Third, Guardian contends that it is entitled to recover under the price adjustment clause of the contract at least for the December extension based on WD 12. Guardian claims that WD 12, issued on November 12, 2002, was in effect at the beginning of the December 1 extension period. Although WD-12 was subsequently rescinded, the new contract had already taken effect for the December 1, 2002 to January 31, 2003 contract renewal period. Finally, Guardian claims it is entitled to an Equitable Adjustment for the December extension under FAR 252.243-7002, the Changes Clause of the contract.

We begin with the language of the Price Adjustment Clause, FAR 52.222-43:

d) The contract price or contract unit price labor rates will be adjusted to reflect the Contractor's actual increase or decrease in applicable wages and fringe benefits to the extent that the increase is made to comply with or the decrease is voluntarily made by the Contractor as a result of:

(1) The Department of Labor wage determination applicable on the anniversary date of the multiple year contract, or at the beginning of the renewal option period. . . .

(2) An increased or decreased wage determination otherwise applied to the contract by operation of law. . . .

Under this FAR provision, therefore, Guardian's first argument succeeds only if WD 13 was "applicable . . . at the beginning of the renewal option period," or October 1, 2002. It was not. Under Guardian's theory, WD 13 was "applicable" as of October 1 by virtue of the October 1, 2002 effective date of the Amended CBA, referred to in DOL's wage determination. Guardian's argument, however, overlooks the fact that wage

determinations issued by DOL are not retrospective, regardless of the effective date of the underlying CBA. As 29 C.F.R. § 4.3(b) makes clear, such wage determinations

> shall be made applicable by contract to all service employees of such class employed to perform such services in the locality <u>under any contract subject to section 2(a) of the Act which is entered into thereafter and before such determination has been rendered obsolete by a withdrawal, modification, or supersedure</u>.

(Emphasis added). The descriptive language in WD 13 characterizing the Amended CBA as "effective October 1, 2002 through October 30, 2004 and amended on January 10, 2003" does not trump the clear language of DOL's regulations. Under those regulations, WD 13, issued on March 5, 2003, could not and did not apply to either the October or December extensions.

Guardian's second argument also fails, as neither Section 4(c) of the SCA nor 29 C.F.R. § 4.163(b) applies to the period in question. As noted above, Section 4(c) guarantees employees the same wages and fringe benefits they received under a predecessor contract for substantially similar services in the same locality. Section 4.163(b) implements Section 4(c). Both require that the minimum wages and fringe benefits be based on a CBA that is a result of arm's-length negotiations. Here, DOL determined that the contingency clause in the New CBA violated this arm's-length requirement, thus taking the New CBA outside the purview of Section 4(c). Guardian did not appeal that determination. Accordingly, Guardian's payment of increased wages during the October extension did not result from "[a]n increased . . . wage determination otherwise applied to the contract by operation of law" under FAR 52.222-43.

This brings us to Guardian's third argument, which we accept. Under 29 C.F.R. § 4.3(b), any wage determination issued by DOL will apply to a contract "entered into

thereafter and before such determination has been rendered obsolete by a withdrawal, modification, or supersedure." Here, WD 12 issued on November 12, 2002 and was withdrawn on December 18, 2002. Even though WD 12 was issued in error, it nonetheless applied to the December extension period, which followed the issuance of WD 12 and preceded its withdrawal. Accordingly, Guardian was obligated to pay its employees the higher wages specified in the New CBA and incorporated into WD 12 as of December 1, 2002. Guardian can thus claim entitlement to a price adjustment under FAR 52.222-43(d)(1), for its wage increases resulted from "[t]he Department of Labor wage determination applicable . . . at the beginning of the [December 1] renewal option period."

The government counters that, even if WD 12 applied to the December extension, DOL's withdrawal of WD 12 on December 18, 2002 was retroactive to December 1, 2002. The government, however, is unable to cite any authority for such retroactive withdrawal, save DOL's authority to issue revised wage determinations in the first instance. See 29 C.F.R. § 4.3(a). Not only is Section 4.3(a) silent with respect to retroactivity, but Section 4.3(b), the only authority that speaks to withdrawals of DOL wage determinations, suggests that a withdrawal can only be prospective. Unpersuaded by the government's argument, we thus hold that the Board erred in denying Guardian summary judgment on the issue of price adjustment under FAR 52.222-43(d)(1) for the December 1, 2002 through January 31, 2003 contract extension period.

Because we hold that the Board erred in denying Guardian's claim for a price adjustment for the renewal option period beginning December 1, 2002, we need not

address Guardian's remaining argument regarding equitable adjustment for the same period.

CONCLUSION

Based on the foregoing, we reverse the decision of the Board with respect to the December 1, 2002 to January 31, 2003 contract period and remand for further proceedings consistent with this opinion. We affirm the remainder of the Board's decision.

AFFIRMED-IN-PART, REVERSED-IN-PART AND REMANDED