ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| HD Inc. | ) ASBCA No. 63794 |
| | ) |
| Under Contract No. FA4830-20-C-0010 | ) |

APPEARANCE FOR THE APPELLANT: John R. Tolle, Esq.
 Baker, Cronogue, Tolle & Werfel, LLP
 McLean, VA

APPEARANCES FOR THE GOVERNMENT: Caryl A. Potter, III, Esq.
 Air Force Deputy Chief Trial Attorney
 Kelsi J. Pilcher, Esq.
 Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE WITWER
ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

Appellant HD Inc. (HDI) seeks $174,874.08 for increased costs resulting from the incorporation of a revised Collective Bargaining Agreement (CBA). Respondent, the Department of the Air Force, concedes that HDI is entitled to an equitable adjustment but disputes the amount and method of calculation. Both parties have moved for summary judgment. For the reasons set forth below, we deny HDI's motion and grant summary judgment in favor of the Air Force. We remand the matter to the parties to determine quantum.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS

The following facts are undisputed, unless stated otherwise. On August 4, 2020, the Air Force awarded Contract No. FA4830-20-C-0010 to HDI for grounds maintenance services at Moody Air Force Base, Georgia (ASUMF ¶ 1; gov't resp. to ASUMF ¶ 1; R4, tab 1 at 1, 12). The contract required HDI to provide personnel, equipment, tools, supervision, and other resources necessary to maintain the base's landscaping (R4, tab 1 at 12).

Services were to be performed under fixed-price contract line item numbers (CLINs) (*id.* at 3-11). The period of performance included a 12-month base period and four option years (ASUMF ¶ 4; gov't resp. to ASUMF ¶ 4; R4, tab 1 at 4-11). The subject dispute concerns Option Year Two (compl. at 6), which ran from October 2022 through September 2023 (ASUMF ¶ 31; gov't resp. to ASUMF ¶ 31; R4, tab 22 at 2).

*Solicitation*

The solicitation included two key attachments: a Department of Labor (DOL) wage determination specifying locally prevailing wages and benefits and a Collective Bargaining Agreement (CBA) executed between the predecessor contractor, ProDyn, LLC, and its service employees (R4, tab 41 at 88, 107). For clarity, we refer to the former as the "DOL locality wage determination" and the latter as the "predecessor contractor's CBA." The DOL locality wage determination was No. 2015-4494 dated December 2019 (app. reply, ex. 1, DOL Wage Determination No. 2015-4494).

For the covered positions employed by HDI, the predecessor contractor's CBA set higher wages than the DOL locality wage determination (app. resp. dtd. Jan. 8, 2025, to Bd. Order, Excel spreadsheet, tab "Paul's Allocation"). The predecessor contractor's CBA provided in pertinent part:

> NOTE: The successor contractor's obligation is to ensure that all service employees are paid no less than the wages and fringe benefits to which the employees would have been entitled, including prospective increases, if employed under the predecessor's collective bargaining agreement for the first year of the contract[.]

(R4, tab 41 at 88, 107)

HDI was bound by this CBA during the base year of the contract (ASUMF ¶¶ 6-7; gov't resp. to ASUMF ¶¶ 6-7; app. supp. R4, tab 2 at 2; app. supp. R4, tab 1, RFI No. 1). After the base year, HDI was free to negotiate a new CBA for the option years (*id.*). The solicitation stated that, if a new CBA were negotiated, the awardee could file a Request for an Equitable Adjustment (REA) to recover any increase in wages and benefits mandated under the new CBA (ASUMF ¶ 9; gov't resp. to ASUMF ¶ 9; app. supp. R4, tab 4, RFI No. 47; app. supp. R4, tab 5).

The solicitation incorporated by reference two key Federal Acquisition Regulation (FAR) clauses: FAR 52.222-41, SERVICE CONTRACT LABOR STANDARDS (AUG 2018), and FAR 52.222-43, FAIR LABOR STANDARDS ACT AND SERVICE CONTRACT LABOR STANDARDS—PRICE ADJUSTMENT (MULTIPLE YEAR AND OPTION CONTRACTS) (AUG 2018) (app. reply at 3; GSUMF ¶¶ 1-2; R4, tab 41 at 73, 78). For ease of reference, we refer to these as the SCA Clause and the Price Adjustment Clause.

With respect to offerors' price proposals, the solicitation specified that the Air Force would evaluate offerors' total evaluated prices for reasonableness (R4,

tab 41 at 104). It also stated that the agency reserved the right to evaluate proposals for price realism and reject those with unrealistic pricing (*id.* at 104-05).

During the solicitation period, the Air Force responded to Requests for Information (RFIs) from offerors. Both parties agree that the government's answers were incorporated into the solicitation through amendment (ASUMF ¶¶ 7-8; gov't resp. to ASUMF ¶¶ 7-8). The following government responses are relevant to this dispute:

> Q1. Does awardee have to comply with the existing Collective Bargaining Agreement (CBA)?
>
> — The first year has to be in accordance with the first year of the existing CBA and afterwards the CBA can either continue to be in effect or a new CBA can be negotiated.

(App. supp. R4, tab 4 at 1)

> Q11. Can the government please clarify which document should be used to determine wages for employees?
>
> — The CBA will be utilized for contract and solicitation will be amended to reflect the same.

(*Id.* at 2-3)

> Q46. For the purpose of calculating Labor costs for Option Years 1-4 are we to default to, and use, the published SCA Wage Determination rates?
>
> — Use SCA and consider CBA.

(*Id.* at 9)

> Q49. In the CBA we are not seeing wage rates for Pruner and Pest Controller. Are we to use the SCA Wage Determination rates or does the incumbent contractor use another rate that you can share?
>
> — Follow SCA Wage Determination.

(*Id.*)

3

*HDI's Proposal Submission*

HDI submitted a proposal in response to the solicitation (app. supp. R4, tab 7). In accordance with the solicitation (R4, tab 41 at 11-16, 100-01), HDI's proposed price schedule contained unit prices for the various grounds maintenance services required under the contract, such as irrigation system maintenance, debris removal, and shrub and hedge pruning (app. supp. R4, tab 7 at 5-11). The solicitation did not require offerors to specify the labor wages they used in their pricing, and HDI's proposal did not indicate what wages it applied (app. resp. dtd. Jan. 8, 2025, to Bd. Order at 3; Smith aff. ¶ 16; *see generally* app. supp. R4, tab 7).[1]

In this appeal, HDI asserts that it used the wages set forth in the predecessor contractor's CBA to prepare its base year pricing and used "SCA rates" for the option years (ASUMF ¶ 11 (citing app. supp. R4, tab 7); Smith aff. ¶ 9; R4, tab 29 at 2). In response to Board inquiries, HDI clarified that "SCA rates" refers to the wages listed in the DOL locality wage determination (app. resp. dtd. Jan. 8, 2025, to Bd. Order at 1).

To support its assertion that it used the DOL locality wage determination to prepare its option year pricing, HDI submitted an affidavit from one of the individuals who prepared HDI's proposal for this effort (Smith aff. ¶¶ 6, 9, 12), along with an Excel spreadsheet used to calculate the contract pricing (*id.* ¶ 10). The affidavit and spreadsheet confirm HDI's assertion (*see* Smith aff. ¶¶ 11-13; *compare* app. resp. dtd. Jan. 8, 2025, to Bd. Order, Excel spreadsheet, *with* app. reply, ex. 1, DOL Wage Determination No. 2015-4494).

The Air Force disputes HDI's assertion that it relied upon the DOL locality wage determination to price the option years and argues that "an evidentiary hearing" is required to resolve the issue (gov't resp. to ASUMF ¶¶ 11, 33; gov't cross-mot. at 17-18). The Air Force, however, presents no evidence to contradict the affidavit or spreadsheet (gov't cross-mot. at 18; gov't resp. dtd. Jan. 21, 2025, to Bd. Order at 1). Instead, the Air Force raises generalized concerns about the credibility of HDI's affiant and offers additional legal arguments (gov't resp. dtd. Jan. 21, 2025, to Bd. Order at 1)—neither of which is sufficient to preclude summary judgment.

*Contract Award and Exercise of Option Years*

The Air Force awarded the contract to HDI in August 2020 (R4, tab 1). The contract included the predecessor contractor's CBA as an attachment (R4, tab 1

---

[1] There is no indication in the record, nor do the parties allege, that HDI's prices raised any concerns with the agency regarding unrealistically low prices.

at 88; tab 4) and, like the solicitation, incorporated the SCA Clause and the Price Adjustment Clause (ASUMF ¶ 18; GSUMF ¶¶ 1-2; R4, tab 1 at 75, 79).[2]

On October 1, 2021, the Air Force exercised Option Year One and incorporated into the contract a new CBA negotiated between HDI and its employees (ASUMF ¶ 16; gov't resp. to ASUMF ¶ 16; R4, tab 14). The CBA was effective October 1, 2021 through September 30, 2022 (R4, tab 14 at 2) and included the same annual wage increases for labor categories as the predecessor contractor's CBA (*compare* R4, tab 16 at 23, App. A, *with* tab 4 at 23, App. A). HDI subsequently submitted an REA and claim to recover increased costs due to the new wage rates (ASUMF ¶¶ 20, 26; gov't resp. to ASUMF ¶¶ 20, 26).

The Air Force partially granted HDI's REA by issuing a modification to increase by contract by $21,890.90 (ASUMF ¶ 22; gov't resp. to ASUMF ¶ 22; R4, tab 20). The Air Force contends that this adjustment represents the difference between the wages HDI paid its employees under the new CBA for Option Year One and those paid during the contract's base period in compliance with the predecessor contractor's CBA (gov't cross-mot. at 3-4 (citing R4, tab 37 at 2). Although the parties dispute whether HDI was fully compensated for Option Year One, that issue is not before us, and we do not address the propriety of the adjustment in our decision.[3]

On October 1, 2022, the Air Force exercised Option Year Two and incorporated into the contract another new CBA negotiated between HDI and its employees (ASUMF ¶¶ 31-32; gov't resp. to ASUMF ¶¶ 31-32; R4, tab 22 at 2). This CBA was effective October 1, 2022 through September 30, 2025 (ASUMF ¶ 32; gov't resp. to ASUMF ¶ 32; R4, tab 23). As in the previous option year, HDI submitted an REA

---

[2] HDI alleges that the "initial CBA in the Contract" was "replaced" by another CBA on October 1, 2020, through Modification No. P00001—a claim that the Air Force does not dispute (ASUMF ¶ 13-14; gov't resp. to ASUMF ¶¶ 13-14). We, however, believe the parties are mistaken. Upon reviewing the CBA attached to the contract at the time of award (R4, tab 4) and the CBA included as an attachment to Modification No. P00001 (R4, tab 10), we find that they are identical copies of the same CBA executed on September 21, 2018, between the predecessor contractor, ProDyn, LLC, and its employees. That said, we do not consider the parties' position on this issue is material to resolving the dispute. Accordingly, we did not request further briefing on this matter.

[3] Our decision does not imply endorsement of the amount granted for Option Year One. Because the Option Year One adjustment directly impacts the calculation of the adjustment for Option Year Two, this issue is one for the parties to address during the quantum phase.

requesting $174,874.08 to account for wage increases (ASUMF ¶ 34a[4]; gov't resp. to ASUMF ¶ 34a; R4, tab 38 at 6-8). HDI asserts that the new wages for Option Year Two are higher than those in its proposal and higher than the wages in the CBA for Option Year One (ASUMF ¶¶ 11, 16, 33).[5]

*Claim and Final Decision*

The Air Force partially granted HDI's REA by issuing proposed bilateral Modification No. P00012 (ASUMF ¶ 34b; gov't resp. to ASUMF ¶ 34b; R4, tab 28). The modification sought to increase the contract price by $52,145.28 to account for the incorporation of the new CBA (ASUMF ¶¶ 35-36; gov't resp. to ASUMF ¶¶ 35-36; R4, tab 28 at 2). This increase includes the $21,890.90 adjustment for Option Year One and a $30,245.31 adjustment for Option Year Two—the latter representing the alleged difference between the wages HDI paid under the CBA for Option Year Two and those paid under the CBA for Option Year One (ASUMF ¶ 36; gov't resp. to ASUMF ¶ 36; gov't cross-mot at 4-5).[6]

HDI declined to sign the modification and instead submitted a certified claim for $174,874.08 on July 7, 2023 (ASUMF ¶¶ 40-41; gov't resp. to ASUMF ¶¶ 40-41; R4, tab 29). On October 24, 2023, the contracting officer partially denied the claim, approving an increase of $52,145.28 and denying the remainder of HDI's request (ASUMF ¶¶ 43-44; gov't resp. to ASUMF ¶¶ 43-44; R4, tab 30, at 1-3). HDI appealed to the Board.

*Dispute Over Basis for the Adjustment*

The parties agree that incorporating the CBA for Option Year Two required the government to adjust the contract price. They dispute, however, how the adjustment should be calculated. HDI argues that it is entitled to the difference between the wages

---

[4] There are two paragraphs in appellant's motion numbered as paragraph 34. For clarity, we refer to them as paragraph 34a and 34b.

[5] The Air Force acknowledges that the new wages are higher than those in the preceding CBA but disputes whether they exceed the wages HDI used in its proposal, pointing out that HDI's proposal does not indicate the wages used (gov't resp. to ASUMF ¶¶ 11, 16, 33). As explained above, however, HDI relies on other evidence to support its claim, which the Air Force does not adequately refute.

[6] We are unable to determine the exact value of the adjustment calculated by the Air Force for Option Year Two because it is simultaneously listed as $30,245.31 and $30,254.38 in the record (R4, tab 28 at 2; tab 30 at 1-2). The parties offer no explanation for this minor discrepancy, and we do not consider it material to our decision at this time.

6

in the new CBA and those in its proposal (app. mot. at 10; app. reply at 2), which were based on the DOL locality wage determination (ASUMF ¶ 11; app. resp. dtd. Jan. 8, 2025, to Bd. Order at 1-3; Smith aff. ¶ 9). According to HDI, this difference amounts to $174,874.08 (app. mot. at 10).

The Air Force counters that the wages HDI used to prepare its proposal are irrelevant. The Air Force maintains that HDI was legally bound to comply with the predecessor contractor's CBA, which established minimum wages for the contract (gov't cross-mot. at 6). Although HDI could negotiate new wages in the option years through subsequent CBAs, those wages could not fall below this established floor. Accordingly, the Air Force contends that any adjustment should be limited to the difference between the wages in HDI's newly negotiated CBAs and the predecessor contractor's CBA (gov't cross-mot. at 6-8). Put simply, the Air Force asserts that the wages were "pegged to the CBA incorporated into the contract at the time of award" (*id.* at 8). If HDI chose to base its proposal on wages below this minimum, as it claims (ASUMF ¶ 33), the Air Force argues that the government is not responsible for any resulting shortfall due to HDI's "underbidding" (gov't cross-mot. at 7).

In its reply brief, HDI appears to acknowledge that it was required to pay its employees at or above the wages specified in the predecessor contractor's CBA throughout contract performance (app. reply at 13 ("Now, it is clear the procurement has always, by law, been subject to the CBA, and the payment obligations of the CBA apply retroactively and prospectively."); *see also* ASUMF ¶ 19 (citing FAR 52.222-41(f))). Nevertheless, HDI contends that the adjustment for Option Year Two should not be constrained by the predecessor contractor's CBA because the Air Force's solicitation allegedly instructed offerors to base their option year pricing on the DOL locality wage determination rather than the CBA wages (*id.* at 2-3, 9). HDI asserts that it followed this instruction and that the awarded contract price reflects the lower DOL wages (*id.*; ASUMF ¶¶ 10-11; Smith aff. ¶ 17). Based on this premise, HDI contends that, under these unique circumstances, the adjustment for Option Year Two should be calculated as the difference between the wages specified in the new CBA and those in HDI's proposal (app. reply at 2, 15).

DECISION

The standard for summary judgment is well-established. Summary judgment is appropriate where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). The moving party bears the burden of demonstrating the absence of any genuine factual dispute, and all significant doubt over factual issues must be resolved in favor of the non-moving party. *Id.* However, the party opposing

7

summary judgment must present evidence of a factual conflict; mere denials or conclusory statements are insufficient. *Id.* at 1390-91.

When reviewing cross-motions for summary judgment, we evaluate each motion independently, considering the evidence in the light most favorable to the non-moving party. *Lockheed Martin Aeronautics Co.*, ASBCA No. 62209, 22-1 BCA ¶ 38,112 at 185,119 (citing *Almanza v. United States*, 935 F.3d 1332, 1337 (Fed. Cir. 2019)). The standard remains unchanged in cross-motions, with each nonmovant receiving the benefit of favorable inferences. *Chevron U.S.A. Inc. v. Mobil Producing Tex. & N.M.*, 281 F.3d 1249, 1253 (Fed. Cir. 2002) (citing *Murphy Expl. & Prod. Co. v. Oryx Energy Co.*, 101 F.3d 670, 673 (Fed. Cir. 1996)).

The parties' motions require the Board to interpret various provisions of the solicitation, which we do by applying contract interpretation principles. *See e.g., Korte Const. Co.*, ASBCA No. 63148, 23-1 BCA ¶ 38,454 at 186,908. Contract terms must be read as a whole, giving reasonable meaning to all provisions while avoiding interpretations that render any part useless, inexplicable, void, or superfluous. *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004). To determine whether an ambiguity exists, we first look to the plain language of the contract. *Am. Int'l Contractors, Inc.*, ASBCA Nos. 60948, 61166, 18-1 BCA ¶ 37,061 at 180,411. A contract is ambiguous only if it is reasonably susceptible to more than one interpretation. *Edward R. Marden Corp. v. United States*, 803 F.2d 701, 705 (Fed. Cir. 1986). A mere disagreement between parties is not sufficient to establish an ambiguity. *Metric Constructors, Inc. v. Nat'l Aeronautics and Space Admin.*, 169 F.3d 747, 751 (Fed. Cir. 1999). Instead, each party's interpretation must fall within a "zone of reasonableness." *Id.*; *see also WPC Enters., Inc. v. United States*, 323 F.2d 874, 876 (Ct. Cl. 1963). If the contract language is clear and unambiguous, it must be given its plain and ordinary meaning. *Alaska Lumber & Pulp Co. v. Madigan*, 2 F.3d 389, 392 (Fed. Cir. 1993). The Board may not use extrinsic evidence to create an ambiguity where none exists. *Interwest Constr. v. Brown*, 29 F.3d 611, 615 (Fed. Cir. 1994); *see also Am. Int'l Contractors Inc.*, 18-1 BCA ¶ 37,061 at 180,411.

A.      HDI Was Required to Adhere to the Predecessor Contractor's CBA.

The Service Contract Act (SCA) was enacted to safeguard the wages and fringe benefits of service workers employed on government contracts. *Call Henry, Inc. v. United States*, 855 F.3d 1348, 1350 (Fed. Cir. 2017); *Lear Siegler Servs., Inc. v. Rumsfeld*, 457 F.3d 1262, 1266 (Fed. Cir. 2006); *Sonoran Tech. & Pro. Servs., LLC*, ASBCA Nos. 61040, 61101, 17-1 BCA ¶ 36,792 at 179,331; *Gov't Contracting Res., Inc.*, ASBCA No. 59162, 15-1 BCA ¶ 35,916 at 175,575. It requires DOL to issue minimum wage orders, known as "wage determinations," which apply to fixed-price services contracts. *Lear Siegler Servs., Inc.*, 457 F.3d at 1266; *Sonoran Tech. & Pro. Servs., LLC*, 17-1 BCA ¶ 36,792 at 179,331; *Gov't Contracting Res., Inc.*, 15-1 BCA

¶ 35,916 at 175,575. These determinations establish mandatory wage and benefit levels, and contractors are prohibited from paying less than the amounts specified. 41 U.S.C. § 6703(1), (2); *Lear Siegler Servs., Inc.*, 457 F.3d at 1266-67; *Sonoran Tech. & Pro. Servs., LLC*, 17-1 BCA ¶ 36,792 at 179,331. By setting these standards, the SCA prevents contractors from gaining an unfair advantage in the bidding process by undercutting wages or fringe benefits to service workers, ensuring a level playing field. *Lear Siegler Servs., Inc.*, 457 F.3d at 1266; *Alutiiq Com. Enters., LLC*, ASBCA No. 61503, 20-1 BCA ¶ 37,506 at 182,199; *Sonoran Tech. & Pro. Servs., LLC*, 17-1 BCA ¶ 36,792 at 179,331.

An SCA wage determination is based on either: (1) a DOL determination of locally prevailing wages and benefits, or (2) if a CBA covers the service employees, the wages and benefits specified in the CBA. 41 U.S.C. § 6703(1), (2); 29 C.F.R. § 4.50 (explaining the two types of wage determinations); *Lear Siegler Servs., Inc.*, 457 F.3d at 1266-67; *BAE Sys. Tech. Sols. & Servs. Inc.*, ASBCA Nos. 63218, 63219, 24-1 BCA ¶ 38,634 at 187,812*; Sonoran Tech. & Pro. Servs., LLC*, 17-1 BCA ¶ 36,792 at 179,331. In this regard, wages and fringe benefits required by a CBA qualify as a DOL wage determination. 41 U.S.C. § 6703; 29 C.F.R. § 4.50; *Call Henry, Inc.*, 855 F.3d at 1352; *Lear Siegler Servs.*, 457 F.3d at 1268; *Gov't Contracting Res., Inc.*, 15-1 BCA ¶ 35,916 at 175,576. When a CBA applies, the contractor is required to pay at least the wages and benefits set forth in the CBA, even if they exceed the locally determined rates set by DOL. 41 U.S.C. § 6707(c)(1). In short, the CBA terms take precedence over the DOL locality wage determination.

Additionally, under the SCA, successor contractors are required to pay employees no less than the wages and fringe benefits established in the predecessor contractor's CBA. 41 U.S.C. § 6707(c)(1); *Call Henry, Inc.*, 855 F.3d at 1350; *Lear Siegler Servs.*, 457 F.3d at 1267; *Gov't Contracting Res., Inc.*, 15-1 BCA ¶ 35,916 at 175,575. This requirement, known as the Successor Contractor Rule, mandates that successor contractors maintain wage and benefit levels at least equal to those provided under the predecessor contractor's CBA. 41 U.S.C. § 6707(c)(1); FAR 22.1002-3(a); *Lear Siegler Servs.*, 457 F.3d at 1267; *BAE Sys. Tech. Sols. & Servs. Inc.*, 24-1 BCA ¶ 38,634 at 187,812; *Gov't Contracting Res., Inc.*, 15-1 BCA ¶ 35,916 at 175,575. The Successor Contractor Rule is a self-executing statutory obligation, meaning it applies automatically and is not dependent on the incorporation of a wage determination into the contract. FAR 22.1002-3(a); 29 C.F.R. § 4.163(b); *Lear Siegler Servs.*, 457 F.3d at 1267 (citing *Guardian Moving & Storage Co. v. Hayden*, 421 F.3d 1268, 1270 (Fed. Cir. 2005)); *BAE Sys. Tech. Sols. & Servs. Inc.*, 24-1 BCA ¶ 38,634 at 187,812.

Here, the parties do not dispute that HDI is subject to the Successor Contractor Rule. As the successor to the predecessor contractor, ProDyn, LLC, on a contract for substantially the same services (R4, tab 4), HDI qualified as a successor contractor

during the base year of the contract. *Lear Siegler Servs.*, 457 F.3d at 1267. HDI also remained a successor contractor during the option years because it succeeded itself. *Id.* (citing 29 C.F.R. § 4.163(e)); *BAE Sys. Tech. Sols. & Servs. Inc.*, 24-1 BCA ¶ 38,634 at 187,812-13 (citing FAR 22.1007(b); 29 C.F.R. §§ 4.143(b), 4.163(e)). Accordingly, HDI was required to pay wages and fringe benefits at least equal to those provided under the predecessor contractor's CBA for all covered employees throughout contract performance. In this respect, the Air Force is correct that, although HDI could negotiate new wages in the option years through subsequent CBAs, those wages could not fall below the floor set in the predecessor contractor's CBA. For positions not covered by the CBA, the DOL locality wage determination applied, and the parties appear to agree that a few such positions existed (ASUMF ¶ 10; gov't reply at 4 n.1).

B.    <u>The Price Adjustment Clause Requires Offerors to Base Pricing for Option Years on the Applicable Wage Determination.</u>

The Price Adjustment Clause, FAR 52.222-43, entitles contractors to an increase in the contract price to account for actual changes in wages and fringe benefits resulting from (1) revised DOL wage determinations, (2) an increased wage determination otherwise applied to the contract by operation of law, or (3) an applicable amendment to the fair labor standards. FAR 52.222-43(d); *Call Henry, Inc.*, 855 F.3d at 1351-52; *BAE Sys. Tech. Sols. & Servs. Inc.*, 24-1 BCA ¶ 38,634 at 187,813. Without this clause, offerors would need to estimate and include potential future wage increases in their proposals to account for foreseeable wage adjustments under the contract's option provisions, including potential wage increases due to inflation. *Corrections Corp. of Am. v. Dep't of Homeland Sec.*, CBCA No. 2647, 15-1 BCA ¶ 35,971 at 175,742 (citing *Jets Servs., Inc.*, ASBCA No. 19070, 74-2 BCA ¶ 10,649 at 50,558).

The Price Adjustment Clause requires offerors to base their option year prices on the applicable wage determination, to exclude potential future labor cost increases covered by the SCA from their option year prices, and to warrant at the time of award that their proposed prices do not include "any allowance for any contingency to cover increased costs" for which the clause provides adjustment. FAR 52.222-43(b); *BAE Sys. Tech. Sols. & Servs. Inc.*, 24-1 BCA ¶ 38,634 at 187,813; *Corrections Corp. of Am.*, 15-1 BCA ¶ 35,971 at 175,742. In exchange for this warranty, contractors are entitled to price adjustments under the SCA for actual labor cost increases resulting from new or modified wage determinations. FAR 52.222-43(d); *BAE Sys. Tech. Sols. & Servs. Inc.*, 24-1 BCA ¶ 38,634 at 187,813; *Jets Servs., Inc.*, 74-2 BCA ¶ 10,649 at 50,558. In summary, the clause ensures that contractors do not inflate bids with speculative labor cost increases while guaranteeing them an equitable adjustment if wages increase due to legal requirements.

As established above, at the time of award, the applicable wage determinations for this contract were the predecessor's CBA for covered positions and the DOL locality wage determination for uncovered positions, if any.  Pursuant to the Price Adjustment Clause, HDI was required to base its option year prices on these wage determinations, which it acknowledges it did not do.  Instead, HDI applied the DOL locality wage determination to all positions in the option years, regardless of CBA coverage, thereby intentionally underbidding the effort.  HDI asserts that the Air Force's solicitation instructed offerors to use the DOL locality wage determination rather than the predecessor contractor's CBA when pricing the option years (app. reply at 2-3, 9).  As explained in the following section, we find HDI's interpretation of the solicitation language to be unreasonable.

C.      The Solicitation Did Not Alter The Requirement that Offerors Base their Wages on the Applicable Wage Determination.

HDI alleges that the Air Force instructed offerors to propose option year wages lower than those mandated by the SCA.  While it may be theoretically possible for the government to impose such a requirement in the solicitation, any such directive would need to be explicit and unmistakable to prevent potential gaming of the system.  Without clear language, an offeror could bid below the predecessor contractor's CBA wages and then seek to recover the shortfall through a contract adjustment, undermining the integrity of the procurement process.  This approach would create an unfair competitive advantage for offerors submitting unrealistically low offers, forcing the government to cover the gap during performance, while disadvantaging offerors who complied with statutory wage requirements from the outset.

To be clear, there is no evidence in the record suggesting that HDI intentionally sought to game the system.  Rather, HDI contends that the Air Force, through its response to RFI No. 46, instructed offerors to use the DOL locality wage determination rather than the predecessor contractor's CBA wages when preparing option year pricing (app. reply at 2-3, 9).  HDI argument relies solely on the phrase "[u]se SCA" in the agency's response to RFI No. 46:

> Q46.  For the purpose of calculating Labor costs for Option Years 1-4 are we to default to, and use, the published SCA Wage Determination rates?
>
> —      Use SCA and consider CBA.

(App. supp. R4, tab 4 at 9)  HDI interprets "[u]se SCA" as a directive to rely exclusively on the DOL locality wage determination when preparing an offer for the option years (app. reply at 2-3).  By contrast, the Air Force interprets this phrase as requiring offerors to base option year pricing on both the DOL locality wage

11

determination and the CBA, as appropriate—the DOL locality wage determination for uncovered positions, if any, and the CBA for the covered positions (gov't reply at 4 n.1).

HDI's interpretation is unreasonable for several reasons. First, it leads to inconsistencies and outcomes that defy both legal requirements and practical logic. Under HDI's interpretation, offerors would be required to submit offers based on wages and benefits they could not legally pay during contract performance. As discussed above, the Successor Contractor Rule required HDI to pay its employees at least the wages and benefits established in the predecessor contractor's CBA for covered positions. The agency's response to RFI No. 1 also emphasized this requirement:

> Q1. Does awardee have to comply with the existing Collective Bargaining Agreement (CBA)?
>
> — The first year has to be in accordance with the first year of the existing CBA and afterwards the CBA can either continue to be in effect or a new CBA can be negotiated.

(App. supp. R4, tab 4 at 1) Nothing in the solicitation suggested that the DOL locality wage determination would serve as the basis for wages and benefits for covered positions in the base year or subsequent option years.

Second, HDI's interpretation undermines the fundamental purpose of the SCA. The SCA was enacted to prevent underbidding by ensuring that service employees receive fair wages and benefits. Allowing contractors to submit offers based on lower, non-compliant rates and then seek an upward adjustment during performance directly contradicts this objective.

Third, HDI's interpretation lacks any practical justification. HDI offers no plausible rationale for why the government would require offerors to propose wages that could not be legally paid. The Price Adjustment Clause already ensures an apples-to-apples comparison by requiring offerors to base their option year prices on the applicable wage determinations. Creating an alternative bidding standard, as HDI suggests, would serve no obvious logical or practical purpose.

Fourth, HDI's interpretation conflicts with multiple provisions of the solicitation. To begin with, the solicitation explicitly stated that the government reserved the right to evaluate proposals for price realism and reject those with unrealistic pricing. It would be illogical for the Air Force to simultaneously require

12

offerors to use unrealistic wages in their pricing while also reserving the right to reject such proposals.

Moreover, HDI's interpretation conflicts with the Price Adjustment Clause, which mandates that offerors base their option year prices on the applicable wage determinations—the CBA for covered positions and the DOL locality wage determination for uncovered positions. FAR 52.222-43(b). By disregarding this requirement, HDI's approach is inconsistent with the contractual framework governing labor cost adjustments.

Additionally, HDI's interpretation is irreconcilable with the Air Force's response to RFI No. 11, which further clarified the applicable wage determination:

> Q11. Can the government please clarify which document should be used to determine wages for employees?
>
> — The CBA will be utilized for contract and solicitation will be amended to reflect the same.

(App. supp. R4, tab 4 at 2-3) This response makes clear that the CBA is the applicable wage determination for performance of this contract.

Finally, HDI's interpretation ignores the agency's full response to RFI No. 46. The Air Force instructed offerors to "[u]se SCA *and consider CBA*" (app. supp. R4, tab 4 at 9) (emphasis added). HDI's reading renders "and consider CBA" meaningless, which violates fundamental contract interpretation principles requiring that all terms be given effect. *Sonabend Co.*, ASBCA No. 63359, 24-1 BCA ¶ 38,482 at 187,034 (quoting *Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 979 (Ct. Cl. 1965)).

In sum, the only reasonable interpretation of the solicitation is the Air Force's: offerors were required to use the CBA wages for covered positions and the DOL locality wage determination for non-covered positions. This interpretation aligns with applicable law, avoids logical inconsistencies, and is supported by the solicitation's plain language. HDI's contrary interpretation is both unreasonable and unsupported by the record.[7]

We conclude that HDI is entitled to an adjustment reflecting the difference between the wages HDI paid under the Option Year Two CBA and the wages paid

---

[7] Because we conclude that the solicitation did not instruct offerors to propose wages lower than those mandated by the SCA, we need not determine whether the Price Adjustment Clause could serve as a basis for an adjustment in such a hypothetical scenario.

13

under the Option Year One CBA.[8]  Additionally, for any positions not covered by the CBA, HDI is entitled to an adjustment based on any differences in the published DOL locality wage determinations.

D.     HDI's Miscellaneous Arguments

HDI has raised several miscellaneous arguments, which we address briefly here.  HDI did not assert any specific legal basis for recovery in its claim, complaint, or motion for summary judgment.[9]  Instead, it introduced new theories for the first time in its reply brief.  Arguments raised for the first time in a reply brief are generally considered waived.  *APTIM Fed. Servs., LLC*, ASBCA No. 62982, 22-1 BCA ¶ 38,127 at 185,218 (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).  Moreover, HDI's newly raised theories are underdeveloped and lack evidentiary support.  Nevertheless, we briefly address them here.

First, HDI argues that, if the Air Force were aware of HDI's interpretation of the solicitation, then "the [g]overnment had to object to HDI's proposal using SCA rates or they are deemed to have entered into the Contract with that understanding" (app. reply at 10) (citing Kenneth J. Allen, *Government Contract Interpretation: A Comprehensive Overview*, 15-4 BRPAPERS 1, 15-4 Briefing Papers 1, 9-10).  However, HDI fails to identify any evidence that the Air Force was actually aware of HDI's interpretation.  To the contrary, the record shows that HDI's proposal did not specify what wages it used to price the option years (Smith aff. at ¶¶ 15-16).

---

[8] Typically, when an option year is exercised, the government automatically carries forward the prior year's adjustment before adding the additional adjustment for the new CBA.  Given that, the additional adjustment is usually calculated as the difference between the two option years, which aligns with how the Air Force argues the adjustment should be determined here (gov't cross-mot. at 1).  The Air Force, however, has not pointed us to any document evidencing that it has already adjusted the Option Year Two contract price to reflect the increase in wages for Option Year One.  Our independent review of the record suggests that Modification No. P00008 may contain such an adjustment (R4, tab 22, at 3), but we make no findings of fact on this matter here. The parties should resolve this matter during the quantum phase.  If such an adjustment has been appropriately made, then HDI is entitled only to the difference between the wages for Option Year Two and Option Year One.

[9] In its motion for summary judgment, HDI contended that its request for an adjustment "is supported by black letter law and the clauses in the Contract" (app. mot. at 10).  HDI did not identify any specific law or contract clauses (*id.*).  As discussed above, the appropriate basis for recovery is the Price Adjustment Clause, which governs wage adjustments resulting from changes in applicable wage determinations.

Next, HDI asserts that it is entitled to summary judgment because the Air Force "misrepresented that the SCA applied to this procurement" (app. reply at 11). To prevail on a claim of misrepresentation, a contractor must show, among other things, "that the Government made an erroneous representation of a material fact that the contractor honestly and reasonably relied on to the contractor's detriment." *Holmes & Narver Constructors, Inc.*, ASBCA Nos. 52429, 52551, 02-1 BCA ¶ 31,849 at 157,395. Whether the Service Contract Act applies to a procurement is a question of law, not fact. Moreover, there was no misrepresentation as the SCA did apply to this contract, and the Air Force's inclusion of the SCA Clause and Price Adjustment Clause in the solicitation put offerors on notice of its applicability. We find no evidence to support HDI's claim of misrepresentation.

HDI also contends that the Air Force "violated the law by including the SCA Wage Determination in the Solicitation, instead of only the CBA" (app. reply at 13). HDI fails to identify any specific law that the Air Force allegedly violated, and we find nothing inappropriate in the Air Force's inclusion of the DOL locality wage determination in the solicitation to account for any non-CBA-covered positions.

HDI alleges that "[a] constructive change has occurred due to the defective wage and benefit terms included by the Agency in the Solicitation and the Contract" (app. reply at 13). The constructive change doctrine, however, does not apply to a commercial items contract. *Korea Eng'g Consultants Corp.*, ASBCA No. 61724, 20-1 BCA ¶ 37,538 at 182,286 (citing *Tkacz Eng'g, LLC*, ASBCA No. 60358, 18-1 BCA ¶ 36,940 at 179,962). Accordingly, HDI's argument fails as a matter of law.

Next, HDI claims that the Air Force possessed "superior knowledge regarding the SCA" and failed to disclose that the "SCA was not applicable to this procurement" (app. reply at 13-14). This argument fails for multiple reasons, chief among them being that the superior knowledge doctrine applies to the nondisclosure of facts. The applicability of the SCA to this contract is a question of law, not fact, making the doctrine inapplicable. Moreover, as previously established, the SCA did apply to this procurement, further undermining HDI's claim.

HDI also alleges mutual mistake, claiming that "[t]he parties intended to comply with the applicable CBA and SCA laws and regulations, but misunderstood or were not aware of the facts regarding the SCA's and CBA's applicability to the procurement" (app. reply at 14). HDI reiterates that it was "unaware of the CBA and its applicability to the procurement" (*id.* at 15). However, HDI provides no evidence that the Air Force was mistaken about any facts. At best, HDI could allege only a unilateral mistake regarding the applicable wage determination. Even then, HDI's claim still fails because it cannot establish, among other things, that "prior to award the Government knew, or should have known, that a mistake had been made." *Holmes &*

15

*Narver Constructors, Inc.*, 02-1 BCA ¶ 31,849 at 157,393 (citing *McClure Elec. Constructors, Inc. v. Dalton*, 132 F.3d 709, 711 (Fed. Cir. 1997)).

Finally, HDI asserts that the Air Force breached its "duty to cooperate" by failing to timely grant HDI's claim for Option Year Two (app. reply at 15). However, because we have determined that the government's interpretation of the solicitation was correct, there is no basis to conclude that the Air Force breached any alleged duty by denying HDI's claim.

<u>CONCLUSION</u>

For the reasons stated above, we grant the government's motion for summary judgment and deny HDI's motion for summary judgment. We remand to the parties to determine the appropriate amount of the adjustment due to HDI consistent with our decision here.

Dated: March 24, 2025

ELIZABETH WITWER
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63794, Appeal of HD Inc., rendered in conformance with the Board's Charter.

Dated:  March 24, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals